Gyl L. LANTZ, (formerly Gyl L. Kinne), Trustee for the benefit of the Gyl L. Kinne Trust, Plaintiff,

v.

PRIVATE SATELLITE TELEVISION, INC., PSTV 1984–1 Limited Partnership, Allen Duplantis, M.D., Kathryn Duplantis, M.D., Russell F. Burns, M.D., Michael Leddy, Dorothy Cortemeglia, Wayne W. Moran, Ellen Hammonds, South Central Financial Group, Inc., Signet Securities Corporation, Leroy G. Johnson and Johnson & Guernsey, P.C., Defendants.

Civ. A. No. 92–CV–40188–FL.

United States District Court, E.D. Michigan, Southern Division.

July 20, 1994.

408

Carolyn Pringle, Flint, MI, Allen R. Telgenhof, Clio, MI, for plaintiff.

R. Robert Schmelzer, J. Brian MacDonald, Peter T. Mooney, Flint, MI, Ralph W. Waddell, Jonesboro, AR, for defendants.

### MEMORANDUM OPINION AND ORDER

NEWBLATT, Senior District Judge.

Before the Court is a motion to dismiss for lack of personal jurisdiction (D.E. # 60) brought by defendants Allen Duplantis, M.D. and Kathryn Duplantis, M.D. ("defendants"). Plaintiff has filed a response (D.E. # 65), to which defendants have filed a reply brief (D.E. # 71). A hearing was held on July 18, 1994. For the reasons that follow, defendants' motion is GRANTED and they are HEREBY DISMISSED without prejudice from this lawsuit.

This action arises out of a failed loan made by plaintiff, Gyl L. Lantz, to defendant PSTV 1984–1 Limited Partnership ("PSTV") in the amount of $70,000.00. PSTV is a limited partnership organized under the laws of the State of North Carolina. Plaintiff, alleging that the loan has not been repaid, seeks to recover the unpaid amounts from the multi-

ple defendants, including several defendants who held limited partnership interests in PSTV. Plaintiff seeks to recover from the Duplantises based upon an Assumption Agreement (plaintiff's response at exh. G) executed by them as part of their purchase of a limited partnership interest in PSTV in 1984. By this motion, defendants seek dismissal of plaintiff's claims against them for lack of personal jurisdiction.

At all times relevant to this action, defendants were residents of the State of Arkansas.[1] Plaintiff resides in Michigan. Defendants were contacted by Todd Etter, an investment broker located in Dallas, Texas, who solicited their purchase of an interest in PSTV. All negotiations for the purchase of an interest in PSTV were conducted by telephone or mail between defendants in Arkansas and Mr. Etter in Texas. Both of the documents upon which plaintiff bases her claim against defendants were mailed by Mr. Etter from Texas to defendants' address in Arkansas. The documents were executed in Arkansas and mailed back to Texas. None of the negotiations or execution of documents occurred in Michigan.

■ Defendants argue in support of their motion that plaintiff fails to allege facts establishing sufficient minimum contacts with the State of Michigan to support this Court's constitutional exercise of personal jurisdiction over them. It is the plaintiff's burden to establish the Court's personal jurisdiction over a defendant. *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980). In Michigan, general personal jurisdiction is established based upon an individual's relationship with the state in one of three ways:

(1) Presence in the state at the time when process is served.

(2) Domicile in the state at the time when process is served.

(3) Consent, to the extent authorized by the consent

. . . .

M.C.L. § 600.701. Plaintiff does not contend that defendants were served within the state. Plaintiff does argue that defendants have consented to personal jurisdiction by their delay in answering the complaint and in their allegedly improper filing of their motion to dismiss. *See* plaintiff's response at 2–4.

■ Plaintiff properly states that an objection to personal jurisdiction is waived where a defendant does not challenge the court's personal jurisdiction over him within his first responsive pleading to the plaintiff's action. Fed.R.Civ.P. 12(b)(6) and 12(h)(1). In this case, although defendants did not file a responsive pleading for over 18 months following the commencement of this action, defendants first responsive pleading was a motion to dismiss for lack of personal jurisdiction (D.E. # 49). While this pleading was stricken by the Court for failure to comply with the local court rules, defendants' next pleading filed was their answer to the complaint, in which they challenged personal jurisdiction by way of an affirmative defense (D.E. # 53). Thus, their initial pleading having contested the Court's personal jurisdiction over them, lack of personal jurisdiction was not waived by defendants by operation of Rule 12. While there was considerable delay in defendants' filing of their responsive pleading herein, that fact by itself does not constitute a waiver of defendants' right to challenge personal jurisdiction. It may be true that one of the goals of Rule 12 is to prevent unnecessary delay in determining certain pretrial motions that can be filed at the initial stage of the litigation;[2] nevertheless, plaintiff has waived the objection of delay where plaintiff has not alleged any legal prejudice or excusable neglect in failing to pursue a default judgment against these defendants.

■ There being no general personal jurisdiction over defendants, the Court still

---

1. The following facts are set forth by defendants in their motion. While any factual disputes must be resolved in plaintiff's favor for purposes of this motion, plaintiff does not challenge defendants' version of the facts material to defendants' motion to dismiss.

2. Plaintiff cites to *Rauch v. Day and Night Mfg. Corp.,* 576 F.2d 697, 701 (6th Cir.1978) [sic], in support of this proposition (plaintiff's response at 4). Unfortunately, this case does not appear in volume 76 of the Federal Reporter (2d). Nevertheless, the Court is willing to accept this assertion as true, without verifying its origin.

may exercise specific personal jurisdiction under Michigan's long arm statute, M.C.L. § 600.705, provided that to do so would not deprive defendants of their constitutional right to due process. *See First Nat'l Monetary Corp. v. Chesney,* 514 F.Supp. 649, 651 (E.D.Mich.1980) (reach of Michigan long arm statute coextensive with broadest grant of jurisdiction consistent with constitutional due process), *citing Sifers v. Horen,* 385 Mich. 195, 199, 188 N.W.2d 623 (1971). To satisfy due process, plaintiff must establish the existence of sufficient minimum contacts by defendants with the State of Michigan such that maintenance of this lawsuit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). To determine whether personal jurisdiction may constitutionally be exercised over these defendants in this case, the Court must apply the three-part test expounded by the Sixth Circuit Court of Appeals in *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendants' activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 381. For the reasons that follow, defendants' actions do not satisfy any part of this test.

■ In *National Can Corp. v. K Beverage Co.,* 674 F.2d 1134 (6th Cir.1982), the Sixth Circuit found that a federal district court in Kentucky had personal jurisdiction over five non-resident guarantors. *Id.* at 1138. The guarantors had executed guaranty contracts in North Dakota and mailed them to the plaintiff in Illinois. Three of the guarantors were shareholders in the debtor corporation, which had it's principal place of business in Kentucky. The remaining two defendants had a property interest in the debtor corpo-

ration by virtue of the marital property laws in their respective states of residence. The court found it significant that these two defendants were required to sign the guaranties in addition to their husbands, thus alerting them to the existence of their property interest in their husbands' shares in the debtor corporation. The court stated: "In signing, [the two non-shareholding defendants] risked their names and financial worth to aid in the establishment of a Kentucky venture in which they had a property interest.... It is our opinion that the guaranties, when signed by a person with an economic interest in the corporation, furnished the necessary minimum contacts." *Id.* at 1137. Taken out of context, this statement would appear to apply to defendants herein.

Significant, however, is the court's reasoning in concluding that these minimum contacts were fundamentally fair and just within the bounds of constitutional due process. After restating the *Southern Machine* three-part test, the court stated:

> All three criteria are met by the guarantors' actions here. First, the defendants voluntarily signed the guaranties, without which credit would not have been furnished. *The guaranty agreements showed clearly that the business the guarantors were assisting in creating was to be located in Kentucky. Those guaranty agreements, in the first paragraph, identified the debtor as "Kentucky Beverage Co., D/B/A Pop Shoppes of America, Louisville, Kentucky"; therefore it is without question that all guarantors, including Barbara and Joanne, knew that Kentucky was the chosen site for the soda pop venture.* The guarantors were either shareholders or through marital rights had an economic interest in KBC. *Signing a personal guaranty for a Kentucky business in which one has an economic interest is the sort of "conduct and connection with the form [sic] State" that makes it reasonable to "anticipate being haled into court there" when the underlying contract is breached.*

*Id.* at 1138 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (emphasis added) ).

In this case, the facts are slightly but significantly different. As in *National Can,* defendants did voluntarily sign the guaranty agreements, without which credit likely would not have been furnished. *See* Assumption Agreement, plaintiff's response at exh. G; First Amended Confidential Private Offering Memorandum ("Offering Memorandum"), plaintiff's response at exh. J. Unlike the agreements signed in *National Can,* however, neither the Assumption Agreement nor the Offering Memorandum signed herein indicates that any business would be created or carried on in Michigan.

The Offering Memorandum indicates that the partnership will be a North Carolina limited partnership, with the two general partners being businesses incorporated respectively under the laws of North Carolina and Delaware. The partnership was to do business in the Washington, D.C. and Houston, Texas metropolitan areas, and would "engage in such other activities as may be necessary, desirable or appropriate including, without limitation, the incurring of indebtedness and the granting of liens and security interests on the real and personal property of the Partnership to secure the payment of such indebtedness." The Offering Memorandum further requires each limited partner to execute an agreement to assume the debts of the limited partnership, in effect a guaranty agreement. Finally, while the Offering Memorandum does provide a notice to Michigan residents—as well as separate notices to residents of several other states—regarding the State's recognition of the value of the securities offered thereunder, that notice is directed toward those being solicited for a partnership interest in PSTV and does not indicate that any business of the partnership will be undertaken in Michigan or even that loans necessarily will be solicited there.

The Assumption Agreement itself identifies PSTV as a North Carolina limited partnership, and indicates that the purpose for the agreement is "to induce the Lenders to advance funds to the Partnership and enter into certain loan agreements." The Assumption Agreement does not specify in which geographical locations PSTV would solicit lenders to which the limited partners would be liable for a percentage of the debt assumed by them.

■ Defendants did have an economic interest in PSTV, but as limited partners in a North Carolina limited partnership, not as shareholders of a corporation with its principal place of business within the forum state. As limited partners, defendants had neither knowledge nor control of where PSTV might solicit lenders to raise capital for its North Carolina/Washington, D.C./Texas enterprise. There is absolutely no indication that defendants could have anticipated "being haled into court" in Michigan. The holding of *National Can* establishes that defendants clearly would be amenable to suit in North Carolina, Washington, D.C., or Texas. To adopt plaintiff's proposed application of that case would leave limited partners such as these defendants amenable to suit in any state where the limited partnership in which they invested happened to solicit lenders. The Assumption Agreement upon which plaintiff relies in this action does not specify that defendants would be amenable to suit in Michigan; only that defendants would be personally liable for the debts incurred by PSTV. Under the facts of this case, this Court's exercise of personal jurisdiction over these defendants would be beyond the bounds of fair play and substantial justice. Therefore, the Court finds that is has no jurisdiction over defendants.[3]

The other case relied upon by plaintiff, *First Security Bank v. McMillan,* 627 F.Supp. 305 (W.D.Mich.1985), is not in conflict with the Court's ruling herein. In that case, the district court found personal jurisdiction over a non-resident defendant for guaranty agreements signed with the intent of assisting a *Michigan* business. *Id.* at 309. With regard to a second non-resident defendant, however, the court found it lacked personal jurisdiction based solely upon a guaran-

---

**3.** While the Court acknowledges that this disposition might result in further expense to plaintiff, and possibly to other defendants as well, the question here is jurisdictional and the Court is not free to add these defendants merely because it would serve the interests of judicial economy to do so.

**412**

ty agreement which lacked any indication that defendant could have expected to be summoned into a Michigan court in a dispute over that guaranty contract. *Id.* at 309–10.

To the extent that defendants rely upon *Lazzaro v. Charlevoix Lakes,* 108 Mich.App. 120, 310 N.W.2d 295 (1981), the Court refers them to *First Security Bank,* 627 F.Supp. at 308, n. 3, in which the district court emphasizes the illogic of the Michigan court's disposition. Moreover, as noted by the *First Security Bank* court, the state court ruling on federal due process is not binding on this Court and is, in fact, contrary to the Sixth Circuit's holding in *National Can.*

■ Finally, the Court rejects plaintiff's argument that Mr. Etter was acting as an agent of these defendants in soliciting lenders for PSTV in Michigan. Mr. Etter solicited and negotiated defendants' limited partnership investment in PSTV. Thereafter, Mr. Etter solicited loans from other investors, including plaintiff. Merely because Mr. Etter may have acted as an agent for defendants in obtaining their limited partnership interest with PSTV,[4] that would not make him thereafter defendants' agent with regard to any further actions taken by him. Clearly, in soliciting lenders Mr. Etter was acting as an agent of PSTV, not of each one of its individual limited partners. Plaintiff has cited no law that would persuade the Court otherwise.

■ For the reasons set forth herein, defendants' motion to dismiss (D.E. # 60) is GRANTED.[5] Plaintiff's claims against defendants Allen and Kathryn Duplantis are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

---

4. In making this assumption for purposes of this motion, the Court emphasizes that the record is unclear as to whether Mr. Etter acted as defendants' agent in negotiating defendants' partnership interest in PSTV. From the facts presented with this motion, it appears more likely that Mr. Etter was acting as agent for PSTV in soliciting defendants' support. Additionally, as plaintiff's counsel conceded at the hearing, plaintiff has

insufficient facts at this time to support the allegation that Mr. Etter was acting as defendants' agent in soliciting the loan from plaintiff in Michigan.

5. As the Court lacks personal jurisdiction over defendants, plaintiff's argument that they are indispensable parties is moot.