**FLOYD P. BUCHER & SONS, INC. et al.**

v.

**SPRING VALLEY ARCHITECTS, INC. et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI94-3187.

Decided Oct. 1, 1996.

*Schnorf & Schnorf Co., L.P.A.,* and *Christopher F. Parker,* for plaintiffs.

*Spengler Nathanson, James R. Jeffery* and *Susan B. Nelson,* for defendant Spring Valley Architects, Inc.

*Eastman & Smith Ltd., James F. Nooney* and *David F. Cooper,* for defendants Adam J. Maida and Our Lady of Mt. Carmel Parish.

CHARLES J. DONEGHY, Judge.

This case is before the court on (1) the motion of defendants Adam J. Maida and Our Lady of Mt. Carmel Parish ("the Church Defendants") to dismiss the complaint pursuant to Civ.R. 12(B)(2) for lack of personal jurisdiction and Civ.R. 12(B)(6) for failure to state a claim against them; (2) the motion of the Church Defendants to dismiss the complaint pursuant to the doctrine of *forum non conveniens*; and (3) the motion of defendant Spring Valley Architects, Inc.

("Spring Valley") to dismiss the complaint also pursuant to the doctrine of *forum non conveniens*. Upon review of the pleadings, evidence (regarding the Civ.R. 12[B][2] and *forum non conveniens* motions), memoranda of the parties, and applicable law, the court finds that these motions should be denied.

## I

## FACTS

The plaintiffs in this case are Floyd P. Bucher & Sons, Inc. ("Bucher"), a construction company, and Ohio Farmers Insurance Company ("Ohio Farmers"), Bucher's bonding company. The defendants are the Church Defendants, Adam J. Maida, Our Lady of Mt. Carmel Parish ("Mt. Carmel"), and Spring Valley.

This case involves a construction contract ("the contract") entered into between the parties under which plaintiff Bucher agreed to construct a new "Family Life Center" ("the project") on the premises of Mt. Carmel parish located roughly two miles north of Toledo, Ohio, in Temperance, Michigan. The defendants contend that Spring Valley identified defects in some aspects of Bucher's work on the project and, as a result, the Church Defendants retained Bucher's final payment due under the contract. Plaintiffs, Bucher and Ohio Farmers, filed suit in this court against the defendants seeking to recover the final payment. Ohio Farmers provided bonding coverage for Bucher in relation to the project.

Mt. Carmel is a member parish of the Roman Catholic Archdiocese of Detroit ("the Archdiocese"). The Archdiocese encompasses a federation of Roman Catholic parishes in southeastern Michigan. Defendant Adam J. Maida is, or was at all times relevant, the Archbishop of the Archdiocese and a resident of Michigan. None of the Church Defendants owns property in Ohio. Defendant Spring Valley was the Church Defendants' project architect-engineer. Spring Valley is located in Holland, Ohio, and is licensed to exist and operate under the laws of Ohio. Plaintiff Bucher is licensed to exist and operate under the laws of Ohio, and is located in Toledo, Lucas County, Ohio. There is no real dispute that plaintiff Ohio Farmers is an Ohio corporation located in Westfield Center, Ohio.

The affidavits submitted in this case, reviewed in a light most favorable to the nonmovant plaintiffs,[1] indicate the following: Sometime in 1993, Spring Valley, the Archdiocese's project architect-engineer, asked Bucher to submit a bid on the project contemplated at Mt. Carmel. Bucher's project manager, Scott Myers, delivered the bid to the Mt. Carmel offices. Spring Valley later informed Bucher

---

1. See *Sparks v. First Miami Ins. Co.* (May 15, 1992), Lucas App. No. L–92–222, unreported, 1992 WL 105021 (in deciding Civ.R. 12[B][2] motions, evidence shall be construed in favor the nonmovant). See, also, *Wilkerson Shoe Co. v. Natl. Super Mkts., Inc.* (July 26, 1994), Franklin App. No. 94APE01–116, unreported, 1994 WL 386097.

that a competitor contractor had submitted a comparable bid, and Spring Valley asked Bucher to lower its bid for the stated reason that Spring Valley preferred working with Bucher. Bucher lowered its bid, in exchange for an extension of the completion date, and submitted the new bid. Spring Valley later notified Bucher by phone, and by mail, that the defendants selected Bucher to construct the project. It is undisputed that the contract was negotiated in Ohio. Father Alfred Miller of the Mt. Carmel parish and one of his parishioners signed the contract at Mt. Carmel on November 1, 1993 on behalf of the Church Defendants. Sometime shortly thereafter, Bucher's president, Floyd Bucher, signed the contract at Spring Valley's offices in Holland, Ohio, on behalf of Bucher. After execution of the contract and before any dispute arose, the Archdiocese mailed and/or faxed various correspondence to Bucher in Toledo, Ohio, including the notice of commencement. During the course of the contract, Bucher hand-delivered periodic applications for construction draws to Spring Valley at Spring Valley's Holland, Ohio offices; upon approval, the Archdiocese sent payments directly to Bucher by mail at Bucher's Toledo address. At no time did any of the Church Defendants go to Ohio in connection with the project. The contract provides that "[t]he project shall be governed by the law of the place where the project is located [*i.e.*, Michigan]."

## II

## PERSONAL JURISDICTION

When a defendant files a Civ.R. 12(B)(2) motion challenging a court's personal jurisdiction, the plaintiff bears the burden of establishing such jurisdiction. *Edellstein v. Alfrey* (Apr. 21, 1989), Lucas App. No. L–88–132, unreported, 1989 WL 38204, citing *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 307, 14 OBR 371, 372–373, 471 N.E.2d 165, 166–167. To make a determination on the matter, a court may properly review the allegations contained in the pleadings, affidavits, depositions, interrogatories, and may take oral testimony. *Id.* If the parties do not request an oral hearing, the plaintiff need only present a prima facie showing of jurisdiction to withstand the motion. *Id.* The court is to view the pleadings and evidence presented in a light most favorable to the nonmoving plaintiff. *Id.* If the allegations and evidence would permit reasonable minds to find personal jurisdiction, the court must deny the motion. *Id.; Sparks v. First Miami Ins. Co.* (May 15, 1992), Lucas App. No. L–91–222, unreported, 1992 WL 105021.

The question of personal jurisdiction involves a two-part analysis. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 235, 638 N.E.2d 541, 543–544. The trial court must determine (1) whether Ohio's "long-arm" statute and applicable Civil Rule, respectively, confer personal jurisdiction and permit service of process, and,

if so, (2) whether permitting the exercise of personal jurisdiction would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Id.*

## A

## LONG-ARM JURISDICTION AND SERVICE OF PROCESS

The "long-arm" jurisdiction and the service-of-process questions are governed by R.C. 2307.382 and Civ.R. 4.3, respectively. The parties agree that the statute and the rule share one possible category under which "long-arm" jurisdiction and service of process may be exercised. This category is contained in R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), respectively. Using almost identical language, the statute and the rule provide for jurisdiction and permit service when a claim arises out of a defendant's "[t]ransacting any business in this state." In relevant part, R.C. 2307.382(A)(1) reads:

"A court may exercise personal jurisdiction over a person who acts directly or *by an agent,* as to a cause of action arising from the person's:

"(1) Transacting any business in this state * * *." (Emphasis added.)

■ The provisions of the statute and rule relating to transacting business are broadly worded and permit a court to exercise jurisdiction in cases involving actual contracts as well as cases involving business negotiations that were only partly concluded. See *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479–480. A nonresident corporation "is 'transacting any business,' within the plain and common meaning of the phrase, where the nonresident corporation initiates, negotiates a contract, and through a course of dealing becomes obligated to make payments to an Ohio corporation." *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.* (1992), 82 Ohio App.3d 369, 374, 612 N.E.2d 472, 475. However, between private individuals, one noncommercial transaction may be insufficient to constitute "transacting" business in Ohio. *Nationwide Mut. Ins. Co. v. Baker* (1995), 105 Ohio App.3d 336, 663 N.E.2d 1325, citing *Kleinfeld v. Link* (1983), 9 Ohio App.3d 29, 31, 9 OBR 30, 32–33, 457 N.E.2d 1187, 1190–1191 (Ohio defendant's sale of camera to Alaskan plaintiff through nationally circulated photography newsletter afforded insufficient contacts with Alaska).

■ While the Church Defendants are not a for-profit corporation like the defendant corporation in *Hammill,* the court finds that the Church Defendants obviously are not naive private individuals. Given that the Archdiocese oversees a federation of parishes in a six-county area in Southeastern Michigan, and its ability to undertake and conduct extensive and costly construction projects, the

Archdiocese resembles a large nonprofit corporation. Such nonresident entities may be sued in Ohio if they have a sufficient connection with this state. See *Barile v. Univ. of Virginia* (1981), 2 Ohio App.3d 233, 238, 2 OBR 254, 259–260, 441 N.E.2d 608, 615.

■ In this case, the court finds that the Church Defendants did "transact * * * business" in Ohio. Although the Church Defendants did not directly come to Ohio to initiate and negotiate the contract, their project architect-engineer Spring Valley, an Ohio corporation, did so. The business activities of an agent may render the principal subject to the personal jurisdiction of an Ohio court by virtue of the "transacting * * * business" provisions of Ohio's long-arm statute. R.C. 2307.382(A)(1); *Barile* at 236–238, 2 OBR at 257–260, 441 N.E.2d at 613–615. Spring Valley clearly acted as an agent to engage a contractor for the project and as an agent to monitor compliance with the contract.[2] Clearly, the Church Defendants ratified Spring Valley's "initiat[ion]" and "negotiat[ion]" of the contract with Bucher, and "through the course of dealing [they] became obligated to make payments to [Bucher] an Ohio corporation." See *Hammill,* 82 Ohio App.3d at 374, 612 N.E.2d at 475.

## B

## DUE PROCESS

Having concluded that Ohio's "long-arm" statute and rule for service of process apply to the Church Defendants, the Court must next determine whether exercising personal jurisdiction over them comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. See *Kentucky Oaks,* 53 Ohio St.3d at 75, 559 N.E.2d at 479–480. The court finds that the exercise of jurisdiction does not deprive the Church Defendants of any due process rights.

---

**2.** An agency relationship is established when a principal authorizes an agent to act toward the attainment of an objective and the agent agrees so to act. *John E. Foster & Assoc., Inc. v. La Cour* (June 9, 1994), Franklin App. No. 93APG10–1408, unreported, 1994 WL 258381, citing *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 177, 24 OBR 403, 408, 494 N.E.2d 1091, 1096–1097. A principal ratifies an earlier act of an agent when he/she approves the act. *Chase Bank of Ohio v. Mentor Food Mart* (June 28, 1991), Lake App. No. 90–L–14–055, unreported, 1991 WL 117011. Similarly, a principal can become bound by the acts of another, under the doctrine of apparent authority, when the principal holds the other out to the public as having authority to act in a certain way and the third-party dealing with the agent knew of these facts and reasonably believed that the agent had such authority. *Abroms v. Mosley* (Dec. 18, 1990), Franklin App. No. 90AP–238, unreported, 1990 WL 212572, citing *Ammerman v. Avis Rent A Car Sys.* (1982), 7 Ohio App.3d 338, 340–341, 7 OBR 436, 437–440, 455 N.E.2d 1041, 1044–1046.

A state is permitted to assert personal jurisdiction over a nonresident defendant if the nonresident has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 101–102. This determination also involves a two-part analysis (1) whether the defendant has purposefully established "minimum contacts," and (2) whether the exercise of jurisdiction would comport with the "notions of fair play and substantial justice." *Hammill,* 82 Ohio App.3d at 374, 612 N.E.2d at 475.

■ First, a defendant has established "minimum contacts" with a jurisdiction when his or her actions create a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–2184, 85 L.Ed.2d 528, 542–543.

"[W]here the defendant 'deliberately' has engaged in significant activities within a State * * * or *has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there,* and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (Emphasis added.) *Id.* at 475–476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.

■ The defendants argue that they did not purposefully avail themselves of the privileges of acting in Ohio, that the claim against them did not arise from their activities in Ohio, and that they have insufficient contacts with Ohio to foresee being haled into court in this state. See *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 296–297, 100 S.Ct. 559, 566–567, 62 L.Ed.2d 490, 500–501. However, this court finds that the defendants did create a "substantial connection" with Ohio because they created a "continuing obligation[ ]" between themselves and two Ohio "residents," Bucher and Spring Valley. See *Burger King,* 471 U.S. at 475–476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. Additionally, the defendants were shielded by the benefits and protections of Ohio's laws which would have allowed them to enforce Bucher's obligations on the contract and Ohio Farmers' obligation on the construction bond. *Id.* Therefore, the court concludes that the Church Defendants purposefully established minimum contacts with Ohio by entering into the contract with Bucher through their agent Spring Valley.

■ Second, the court finds that the exercise of personal jurisdiction over the defendants would not offend traditional notions of fair play and substantial justice. Following Justice Brennan's guidance in *Burger King,* the *Hammill* court evaluated five factors. They are (1) the burden on the defendant, (2) the

forum state's interest in adjudicating the matter, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interest of the interstate judicial system in obtaining the most efficient resolution, and (5) the shared interests of the states in furthering fundamental social policies. *Hammill,* 82 Ohio App.3d at 376, 612 N.E.2d at 476–477, citing *Burger King,* 471 U.S. at 476–477, 105 S.Ct. at 2184–2185, 85 L.Ed.2d at 543–544.

Upon review of the five factors set out in *Hammill,* the court finds that (1) the burden on the defendants is light given modern transportation and communications, see *Hammill,* 82 Ohio App.3d at 376, 612 N.E.2d at 476–477 (the project site is a short distance from this courthouse, the Archdiocese and its witnesses live within a one-hour drive from the court, and the Church Defendants' agent, Spring Valley, resides in another Toledo suburb); (2) Ohio's interest in this matter is strong (Bucher, Ohio Farmers, and Spring Valley are residents of and licensed to do business in Ohio); (3) the exercise of jurisdiction by this court will provide convenient and effective relief to the three Ohio residents and the witnesses from Mt. Carmel (all reside within a short distance from the courthouse and have legal counsel in Ohio); (4) the relief afforded in this forum promotes an efficient resolution of this matter; and (5) the interstate social policy interest is furthered by the prompt resolution of an essentially local contract dispute, the situs of which is two miles north of Toledo, Ohio.

Based on the foregoing, the court finds that it may properly exercise jurisdiction over the Church Defendants in this case. Accordingly, the court shall deny their Civ.R. 12(B)(2) motion to dismiss.

### III

### FAILURE TO STATE A CLAIM

In their Civ.R. 12(B)(6) motion to dismiss, the Church Defendants argue that the plaintiffs have failed to plead specific facts to sustain this court's personal jurisdiction over them.

The rules governing Civ.R. 12(B)(6) motions to dismiss are well established. In *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753, the Supreme Court of Ohio stated the requirements that must be met before a Civ.R. 12(B)(6) motion to dismiss may be granted:

"In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. * * * Then, before we may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery. * * *" (Citations omitted.) *Id.* at 192, 532 N.E.2d at 756.

A Civ.R. 12(B)(6) motion to dismiss is limited to the face of the pleadings under attack. Staff Notes to Civ.R. 12(B), Rule 12(B) Defenses, How Presented. Whether a party can prevail on the merits is a matter properly determined by proof not pleadings. *Slife v. Kundtz Properties* (1974), 40 Ohio App.2d 179, 69 O.O.2d 178, 318 N.E.2d 557.

 Prior to the enactment of the Civil Rules in Ohio, the Supreme Court of Ohio observed that in order to have personal jurisdiction over a nonresident defendant, a complaint was to (1) "allege specifically * * * prerequisites to jurisdiction of the defendant authorized by [the long-arm] statute," or (2) "set forth allegations sufficient to support a *reasonable inference* that the defendant" had sufficient contacts. (Emphasis *sic.*) *Wright v. Automatic Valve Co.* (1969), 20 Ohio St.2d 87, 88, 49 O.O.2d 388, 388–389, 253 N.E.2d 771, 772. However, since the enactment of the Civil Rules, if a plaintiff ineffectively pleads such contacts and the nonresident defendant then challenges personal jurisdiction, the plaintiff is permitted/required to provide evidence indicating that the exercise of jurisdiction is proper. *Jurko v. Jobs Europe Agency* (1975), 43 Ohio App.2d 79, 87, 72 O.O.2d 287, 291–292, 334 N.E.2d 478, 483.

 In this case, the court finds that the plaintiffs did provide sufficient evidence in support of jurisdiction after the Church Defendant's challenge. See discussion, *supra.* Additionally, the court notes that the plaintiff's complaint alleges sufficient facts to support a "reasonable inference" that the Church Defendants "transacted business" in Ohio. The complaint alleges that (1) Spring Valley served as architect-engineer of record for the project, (2) Bucher executed the contract in Ohio at Spring Valley's offices, and (3) Spring Valley identified the alleged problems that caused the Church Defendants to retain Bucher's final payment under the contract. The court finds that the complaint contains sufficient allegations that the Church Defendants entered into a contract with Bucher which Bucher executed in Ohio and that Spring Valley, an Ohio resident and corporation, was the Church Defendants' authorized agent in relation to the project and Bucher's involvement therewith.

Accordingly, the court finds that the Church Defendants' Civ.R. 12(B)(6) motion to dismiss should be denied.

## IV

## FORUM NON CONVENIENS

The defendants in this case all seek a conditional dismissal of this action pursuant to the doctrine of *forum non conveniens* as recognized by the Supreme Court of Ohio in *Chambers v. Merrell–Dow Pharmaceuticals, Inc.* (1988), 35 Ohio St.3d 123, 519 N.E.2d 370. The defendants contend that the Michigan Circuit

Court of Monroe County, Michigan, the county in which Mt. Carmel is located, is a far more convenient forum for this dispute. Each agrees that the court may condition dismissal upon granting permission to the plaintiffs to refile this case in the Monroe County Circuit Court.

The Supreme Court of Ohio stated:

"The common-law doctrine of *forum non conveniens* is committed to the sound discretion of a court of general jurisdiction, and may be employed * * * to achieve the ends of justice and convenience of the parties and witnesses. * * *" (Citations omitted.) *Chambers,* 35 Ohio St.3d 123, 519 N.E.2d 370, paragraph one of the syllabus.

The doctrine presupposes that proper jurisdiction and venue lie in the forum chosen by the plaintiff and, additionally, assumes that another forum is available in which the defendant may be sued. *Id.* at 126, 519 N.E.2d at 373, citing *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055, 1061–1062. The criteria established by the United States Supreme Court and adopted by the *Chambers* court are to be applied flexibly on a case-by-case basis. *Chambers,* 35 Ohio St.3d at 126, 519 N.E.2d at 373. These factors fall into two categories: (1) private interests of the litigants and (2) public interests of the courts and citizens of the forum. *Id.*

"Important private interests include: '[1] relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive.'

" * * *

"Public interest factors to be considered include [1] the administrative difficulties and delay to other litigants caused by congested court calendars, [2] the imposition of jury duty upon the citizens of a community which has very little relation to the litigation, [3] a local interest in having localized controversies decided at home, and [4] the appropriateness of litigating a case in a forum familiar with applicable law." (Citations omitted.) *Chambers,* 35 Ohio St.3d at 126–127, 519 N.E.2d at 373–374.

As a general rule, " 'the plaintiffs' choice of forum should rarely be disturbed' * * * particularly when the plaintiff has chosen his home forum." *Id.,* 35 Ohio St.3d at 127, 519 N.E.2d at 373. However, a foreign plaintiff's choice deserves less deference because the central purpose of the inquiry is to ensure a convenient local forum for trial. *Id.* If the court determines another forum is more convenient, the doctrine requires the court to dismiss the action but permits

dismissal to be conditioned on the refiling of the matter in the other forum with the defendant's permission. *Id.*

The defendants claim that Michigan has a far greater connection with this dispute. They assert that the Church Defendants are Michigan residents; some of the likely witnesses are Michigan residents; the Michigan court is the more appropriate one to operate a probable jury view in this case; the docket of that court is less crowded than is the docket of this court; the contract requires application of Michigan substantive law; and the court may have difficulty unraveling the gordian knot that is Michigan law. In support of their motions, the defendants cite *Galloway v. Lorimar Motion Picture Mgmt., Inc.* (1989), 55 Ohio App.3d 78, 562 N.E.2d 949. In *Galloway,* an Ohio plaintiff bought "units" in a limited partnership based in California that was organized to raise money for the making of motion pictures. The *Galloway* court concluded that the trial court did not abuse its discretion by dismissing the action under the doctrine *forum non conveniens* because none of the defendants was headquartered in Ohio, but most were located in California; most of the witnesses with knowledge of motion pictures were located in that state; the significant activities of the partnership took place in California; and the primary link with Ohio was the plaintiff who had purchased four out of over thirty-three thousand "units" sold.

This case is properly distinguishable from *Galloway* because in this case the defendants and witnesses are not a half-continent away. Regarding the private interests identified in *Chambers,* the plaintiffs, Ohio Farmers and Bucher, and defendant Spring Valley reside in Ohio; Mt. Carmel parishioners and clergy reside several miles north of Toledo, Ohio; the situs of the project is located in the same Toledo, Ohio suburb, thus making the probable jury view a relatively simple matter; and the seat of the Archdiocese is within a one-hour drive from Toledo, Ohio. Thus, the court finds that the private factors favor Ohio as the most convenient forum. Additionally, the public factors do not favor Michigan over this court. Ohio courts and juries are concerned about the fates of three Ohio corporations and a local Catholic parish. This forum is, arguably, "home" for the community of Temperance, Michigan. While the court's docket is crowded, the court can and will assign this matter to an early trial date. Further, the court is not daunted by the prospect of applying Michigan law and is competent to do so: this court regularly is called upon to apply Michigan law as required by its geographical proximity to Michigan.

Based on the foregoing, the court finds that the defendants' motions to dismiss pursuant to the doctrine of *forum non conveniens* are not well taken and should be denied.

*Motions denied.*