## MUSTANG TRACTOR & EQUIPMENT COMPANY

### v.

## SOUND ENVIRONMENTAL SERVICES, INC. et al.

Court of Common Pleas of Ohio,
Lucas County.

No. CI0199901799.

Decided Nov. 15, 1999.

2

**4**

*Nathan & Roberts* and *W. David Arnold;* *Stumpf, Falgout, Craddock & Massey* and *Henry J. Fastoff IV,* for plaintiff.

*Kerger & Kerger* and *Richard M. Kerger,* for defendants Sound Environmental Services, Inc. and Sound Acquisitions Corp.

*Rohrabachers, Light, Cron, Zmuda & Trimble Co., L.P.A.* and *Matthew J. Rohrabacher,* for defendant John Phillips.

*Kegler, Brown, Hill & Ritter* and *Donald W. Gregory,* for defendants Commercial Oil Services Phase II Trust Fund and Haseley Construction Co., Inc.

*McNamara & McNamara* and *John Petro,* for defendant Insurance Company of the State of Pennsylvania.

CHARLES J. DONEGHY, Judge.

This case is before the court on the Civ.R. 12(B)(2) motion of defendant John A. Phillips to dismiss the complaint against him for lack of personal jurisdiction. Upon review of the pleadings, evidence, memoranda of the parties, and applicable law, the court finds that it should grant the motion.

## I. FACTS

Construing the evidence and allegations in a light most favorable to the plaintiff, Mustang Tractor & Equipment Company ("Mustang"), and for the

purposes of ruling on the instant motion only, the court finds the following to be established facts.

Defendant John Phillips is the president of defendants Sound Environmental Services, Inc. and Sound Acquisitions Corp. (collectively referred to as "the Sound defendants" or "Sound"). The Sound defendants are in the business of environmental engineering and remediation.[1] Mustang is in the business of selling, servicing, and leasing various types of heavy equipment and parts.[2] The Sound defendants are Texas corporations, and Phillips resides in Texas. Both Mustang entities also are Texas corporations.

In May 1997, Sound entered into a contract whereby Sound became a primary subcontractor for an environmental cleanup project at the Commercial Oil Services site located in Lucas County, Ohio. At about the same time, Phillips, acting on behalf of Sound, approached a salesman for Mustang in Texas and informed the salesman that Sound was seeking to acquire construction equipment for use on the Lucas County remediation project. Mustang agreed to finance Sound's acquisition of equipment and to transport the equipment to Lucas County on the condition that Phillips sign a general personal guaranty covering all financial obligations that Sound might undertake with Mustang. Sound executed contracts with and obtained equipment from Mustang, and Phillips signed the required guaranty. Mustang delivered the equipment to Lucas County, Ohio. Sound failed to honor its agreements with Mustang, and Phillips failed to honor the personal guaranty, despite demands by Mustang that he do so.

Mustang originally filed this suit against only Sound, Phillips, and Sound's bonding insurer, defendant Insurance Company of the State of Pennsylvania. Mustang filed an amended complaint adding the general contractor of the cleanup project, Hasely Construction Company, Inc., and the Commercial Oil Services Phase II Trust Fund. On or about October 8, 1999, Mustang dismissed all defendants from this action except Sound and Phillips. Phillips now seeks to have the claim against him dismissed, contending that this court has no personal jurisdiction over him.

---

1. Sound filed a petition for the protection of the United States Bankruptcy Court on or about February 18, 1999. On or about August 4, 1999, that court entered an order lifting the stay on Mustang's action against Sound. (See Notice of Lifting of Bankruptcy Stay, filed in this Court on August 10, 1999.)

2. Some of Mustang's claims in this action arise out of transactions between its affiliate, Mustang Rental Services, Inc. ("Mustang Rental"), and Sound. Mustang Rental is in the business of renting construction equipment. Mustang is the assignee of Mustang Rental's claims against Sound. The court will refer to the two Mustang entities collectively as "Mustang."

 When a defendant files a Civ.R. 12(B)(2) motion challenging a court's personal jurisdiction, the plaintiff bears the burden of establishing such jurisdiction. *Edellstein v. Alfrey* (Apr. 21, 1989), Lucas App. No. L–88–132, unreported, 1989 WL 38204, citing *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 307, 14 OBR 371, 372–373, 471 N.E.2d 165, 166–167; *Armbruster v. Quinn* (C.A.6, 1983), 711 F.2d 1332, 1335. To make a determination on the matter, a court may properly review the allegations contained in the pleadings, affidavits, depositions, and interrogatories, and may take oral testimony. *Giachetti,* 14 Ohio App.3d at 307, 14 OBR at 372–373, 471 N.E.2d at 166–167; *Reliance Elec. Co. v. Luecke* (S.D.Ohio 1988), 695 F.Supp. 917, 919. If the parties do not request an oral hearing, the plaintiff need only present a prima-facie showing of jurisdiction to withstand the motion. *Giachetti,* 14 Ohio App.3d at 307, 14 OBR at 372–373, 471 N.E.2d at 166–167. The court is to view the pleadings and evidence presented in a light most favorable to the nonmoving plaintiff. *Id.* If the allegations and evidence would permit reasonable minds to find personal jurisdiction, the court must deny the motion. *Id.; Sparks v. First Miami* (May 15, 1992), Lucas App. No. L–91–222, unreported, 1992 WL 105021.

 The question whether an Ohio trial court has personal jurisdiction over a nonresident involves a two-part analysis. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 235, 638 N.E.2d 541, 543–544. The trial court must determine (1) whether Ohio's long-arm statute and applicable Civil Rule, respectively, confer personal jurisdiction and permit service of process, and, if so, (2) whether permitting the exercise of personal jurisdiction would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Id.*

## A. LONG–ARM JURISDICTION AND SERVICE OF PROCESS

The long-arm jurisdiction and the service-of-process questions are governed by R.C. 2307.382 and Civ.R. 4.3, respectively. The parties agree that the statute and the rule share one possible category under which long-arm jurisdiction and service of process may be exercised. This category is contained in R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), respectively. Using almost identical language, the statute and the rule provide for personal jurisdiction and permit service when a claim arises out of a nonresident defendant's "[t]ransacting any business in this state." [3] In relevant part, the language of the statute reads as follows:

___

**3.** The Sixth Circuit Court of Appeals has held that the "transacting any business" section of Ohio's long-arm statute extends to the limits of the Due Process Clause. See *Armbruster,* 711

"A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state * * *." R.C. 2307.382(A)(1).

The provisions of the statute and rule relating to "transacting any business in [Ohio]" are broadly worded and permit a court to exercise jurisdiction in cases involving actual contracts, as well as cases involving business negotiations that were only partly concluded. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479–480. The word "transact" used in the long-arm statute is broader that the term "contract" and embraces in its meaning "to carry on business" and "to have dealings." *Goldstein*, 70 Ohio St.3d at 236, 638 N.E.2d at 544. A nonresident's mere solicitation of business in Ohio does not constitute "transacting any business in [Ohio]." *Sherry v. Geissler U. Pehr GmbH* (1995), 100 Ohio App.3d 67, 74, 651 N.E.2d 1383, 1387. But where a nonresident "initiates, negotiates a contract, and through a course of dealing becomes obligated to make payments to an Ohio corporation," that nonresident was "transacting any business in [Ohio]" for purposes of the long-arm statute. *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.* (1992), 82 Ohio App.3d 369, 374, 612 N.E.2d 472, 475.[4] Phillips's guaranty does not fall neatly into either of the "mere solicitation" or the "carry on business" categories.

The court has discovered no Ohio state court or federal court case involving nonresident guarantors in which the courts addressed the reach of Ohio's long-arm statute as an independent and vital prong of the personal jurisdiction analysis.[5] Thus, the court must make a determination about the long-arm prong of the analysis unguided by prior court decisions.

---

F.2d at 1335; *Reliance Elec. Co.*, 695 F.Supp. at 920. Thus, the federal courts in the Sixth Circuit have determined that personal jurisdiction merges into a single question of whether the exercise of jurisdiction comports with the Due Process Clause. *Reliance*, 695 F.Supp. at 920.

4. However, between private individuals, one noncommercial transaction may be insufficient to constitute "transacting" business in Ohio. *Nationwide Mut. Ins. Co. v. Baker* (1995), 105 Ohio App.3d 336, 663 N.E.2d 1325, citing *Kleinfeld v. Link* (1983), 9 Ohio App.3d 29, 31, 9 OBR 30, 32–33, 457 N.E.2d 1187, 1190–1191 (Ohio defendant's sale of camera to Alaskan plaintiff through nationally circulated photography newsletter afforded insufficient contacts with Alaska).

5. But, see, *Women's Fed. Sav. Bank v. Guirlinger* (Oct. 1, 1992), Cuyahoga App. No. 61134, unreported, 1992 WL 252295, and *Reliance Elec. Co.*, 695 F.Supp. 917. The *Guirlinger* court, following the approach taken by the First Appellate District in *Cincinnati Art Galleries v. Fatzie* (1990), 70 Ohio App.3d 696, 699, 591 N.E.2d 1336, 1337–1338, collapsed the separate long-arm and due process prongs into one; the focus was solely on the due process question. Thus, the *Guirlinger* court did not address whether the guarantor in that case had been

In opposition to Phillips's motion, Mustang asserts that Phillips transacted business in Lucas County by (1) inducing Mustang to provide construction equipment to Sound and to finance that equipment for the project in Lucas County, (2) promising to pay Sound's obligation if Sound did not pay, and (3) his general corporate oversight responsibilities over Sound. Mustang cites *U.S. Sprint*, 68 Ohio St.3d 181, 624 N.E.2d 1048, to support its assertion. Mustang correctly observes that, in *U.S. Sprint*, the court concluded that personal jurisdiction under the long-arm statute does not require that the nonresident have a physical presence in the state. See, also, *Hammill*, 82 Ohio App.3d at 374, 612 N.E.2d at 475. In *U.S. Sprint*, both the plaintiff, U.S. Sprint, and the defendant, Mr. K's Foods, Inc., were nonresidents. However, Mr. K's, a wholesale foods distributor, directly engaged in business dealings in Ohio. Mr. K's contracted with U.S. Sprint for seventeen long distance telephone accounts, six of them being in Ohio, through which Mr. K's conducted an extensive telemarketing campaign of its products using independent distributors. In finding that Mr. K's was "transacting * * * business" in Ohio, the *U.S. Sprint* court noted that the phone accounts allowed Mr. K's to conduct its ongoing marketing campaign in Ohio and to coordinate with the independent distributors in Ohio.

Similarly, in *Hammill*, a foreign corporation also directly engaged in business dealings in Ohio. In *Hammill*, the nonresident business solicited the business of an Ohio corporation by phone, conducted negotiations over the phone with the Ohio entity, and ultimately came to an agreement which was reduced to writing.

In both *U.S. Sprint* and *Hammill*, the defendants had directly established business dealings in Ohio. However, unlike the defendants in both of those cases, Phillips established no such dealings in Ohio. Phillips, a Texan, contracted with Mustang, also of Texas, to guarantee an obligation owed by the Sound defendants, who were also Texas corporations. The text of the guaranty agreement specified that Texas was the place for the performance of the guaranty. While

---

"transacting any business" in Ohio. The court notes that the *Fatzie* court, upon whose decision the *Guirlinger* court relied, rendered its 1990 opinion prior to the 1994 decisions of the Supreme Court of Ohio in *Goldstein* and *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 624 N.E.2d 1048. In those cases, the high court reaffirmed its adherence to the two independent prongs of the personal jurisdiction analysis. See *Goldstein*, 70 Ohio St.3d at 235, 638 N.E.2d at 543–544 (the state court is "obligated" to engage in the two-part personal jurisdiction analysis), citing *U.S. Sprint*, 68 Ohio St.3d at 183–184, 624 N.E.2d at 1050–1052. Instead, the *Fatzie* court adopted the rule followed in the Sixth Circuit Court of Appeals; under that rule, the courts viewed the "transacting any business in [Ohio]" portion of the long-arm statute as extending to the constitutional limits of due process and, thus, merged with the due process analysis. See *Creech v. Oral Roberts* (C.A.6, 1990), 908 F.2d 75, 79. Similarly, the court in *Reliance Elec. Co.*, 695 F.Supp. 917, determined that Ohio's long-arm calculus was coextensive with the due process inquiry. *Id.* at 920. Again, that determination is not in conformity with the Supreme Court of Ohio's view. See *Goldstein*, 70 Ohio St.3d at 235, 638 N.E.2d at 543–544.

he did sign the guaranty agreement to facilitate Sound's procurement of the equipment for use in Lucas County, Phillips did not directly engage in business dealings by signing the agreement. In addition, Phillips did not come to Lucas County at any time to oversee the project or to execute any related paperwork. Thus, the court finds that Mustang failed to satisfy its burden to establish personal jurisdiction in this case. Without more than the execution of a guaranty agreement that was negotiated, signed, and to be preformed in Texas, the court finds that Phillips was not "transacting any business in [Ohio]" for purposes of satisfying the long-arm statute, R.C. 2307.382(A)(1). Compare *Sherry*, 100 Ohio App.3d at 74, 651 N.E.2d at 1386–1387 (a nonresident manufacturer who merely sold and installed one piece of machinery in Ohio was not "transacting" business in Ohio).

The court notes that the personal jurisdiction analysis concludes when the plaintiff fails to satisfy the long-arm statute by establishing that the defendant did not "[transact] any business in [Ohio]." See *Sherry*, 100 Ohio App.3d at 74, 651 N.E.2d at 1386–1387. However, assuming *arguendo* that the court has concluded that Phillips did transact business in Ohio, the court will review the due process arm of the personal jurisdiction analysis.

### B. DUE PROCESS

In support of its position that this court should exercise personal jurisdiction over Phillips, Mustang argues that, by his act of guaranteeing Sound's obligation, Phillips engaged in a direct contact with Ohio, making jurisdiction proper in this court. Mustang offers no authority addressing the exercise of jurisdiction over nonresident guarantors.

As a general rule, in the due process portion of the personal jurisdiction analysis, the court must assess whether exercising personal jurisdiction over Phillips comports with the requirements of the Due Process Clause. See *Kentucky Oaks*, 53 Ohio St.3d at 75, 559 N.E.2d at 479–480. A state is permitted to assert personal jurisdiction over a nonresident defendant if the nonresident has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102. This determination also involves a two-part analysis: (1) whether the defendant has purposefully established "minimum contacts," and (2) whether the exercise of jurisdiction would comport with the "notions of fair play and substantial justice." *Hammill*, 82 Ohio App.3d at 374, 612 N.E.2d at 475. Unless due process is satisfied in regard to an individual defendant, jurisdiction is not proper, even if judicial economy and the convenience of the plaintiff are sacrificed. *Bond Leather Co. v. Q.T. Shoe Mfg. Co.* (C.A.1, 1985), 764 F.2d 928, 935.

More specifically, when determining whether due process allows the exercise of personal jurisdiction over a nonresident guarantor whose conduct falls within the state's long-arm statute and when the conduct involves only one act, state courts in Ohio and federal courts in the Sixth Appellate Circuit employ the test articulated in *Southern Machine Co. v. Mohasco Industries, Inc.* (C.A.6, 1968), 401 F.2d 374. See *Women's Fed. Sav. Bank v. Guirlinger, supra,* citing *Fatzie,* 70 Ohio App.3d at 699, 591 N.E.2d 1336; *Reliance Elec.,* 695 F.Supp. at 920. In *Southern Machine,* the court stated:

"First, the defendant must *purposefully avail himself of the privilege* of acting in the forum state or causing a consequence in the forum state. Second, *the cause of action must arise* from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a *substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.*" (Emphasis added.) *Id.* at 381.

This test must be applied on a case-by-case basis and cannot be rigidly followed using a "set of dogmatic rules." *Reliance Elec.,* 695 F.Supp. at 921.

Several courts applying the *Southern Machine* test have found the exercise of personal jurisdiction proper under facts that are properly distinguishable from those presently confronting this court. In *Women's Fed. Sav. Bank v. Guirlinger, supra,* an Ohio plaintiff bank lent money to an Ohio limited partnership for a construction project in Ohio; the bank lent the money only because a Florida resident offered to guarantee the loan. The *Guirlinger* court observed that the guaranty stated that Ohio law governed the obligation, that upon default, notice was to be provided to the guarantor at an Ohio address, and that the guarantor was to perform in Ohio. The *Guirlinger* court concluded that the three prongs of the *Southern Machine* test were satisfied because first, the nonresident purposely availed herself of acting in Ohio when she executed the guaranty and thus reasonably should have foreseen the related consequences in Ohio arising from inducing the loan; second, the default by the debtor arose in Ohio and would not have happened had the guarantor not provided the guaranty; and third, by agreeing to notice of default and performance of the guaranty in Ohio, the guarantor reasonably should have foreseen the connection thus making exercise of jurisdiction in Ohio proper.[6]

---

6. Similarly, in *Monroe Distrib., Inc. v. Future Games, Inc.* (Sept. 3, 1987), Cuyahoga App. No. 52666, unreported, 1987 WL 16534, although the court did not apply the *Southern Machine* test, the court concluded that due process concerns did not prevent that court from exercising jurisdiction over Pennsylvania residents who had come to Cleveland to guarantee the debt of the Pennsylvania corporation of which they were officers when the Ohio creditor became fearful about the debtor's rising debt. The court concluded that the defendants had created the requisite minimum contacts with Ohio by coming to the state and engaging in an ongoing course of business over a period of years bolstered by the guaranties.

In another case, *Natl. Can Corp. v. K Beverage Co.* (C.A.6, 1982), 674 F.2d 1134, the court found that the exercise of personal jurisdiction in Kentucky over nonresident guarantors was proper. In that case, the plaintiff, a Delaware corporation with its principal place of business in Illinois, extended credit to the debtor, a Colorado corporation with its principal place of business in Kentucky. As a requirement for extending credit, the plaintiff insisted that the wives of two corporate officers, living in North Dakota and Minnesota, guarantee the credit line. The guaranty was executed in North Dakota and Illinois. The court suggested that the facts of the case made jurisdiction a close call. *Id.* at 1137. However, the court found that the wives voluntarily signed the guaranty as required by the plaintiff (thus allowing the Kentucky operation to proceed), and that they had a financial interest in the debtor (by virtue of their marital interest in the business arising from their husbands' ownership of the company). *Id.* at 1137–1138. Because of these findings, the court concluded that the factors of the *Southern Machine* test were satisfied: first, the wives had purposely availed themselves of acting in Kentucky; second, the guaranty obligation arose out of the Kentucky default by the debtor; and third, the wives' financial interest created a substantial connection with Kentucky that made the exercise of jurisdiction proper. *Id.*

In addition, in *Reliance Elec.*, 695 F.Supp. 917, the court concluded that the Ohio court properly could exercise jurisdiction over a Pennsylvania guarantor regarding the obligation of a Pennsylvania debtor company. The guarantor was the president and part-owner of the debtor and signed the guaranty to induce the Ohio plaintiff to extend credit. Applying the *Southern Machine* test, the court concluded that the three prongs of the test were met because (1) the nonresident guarantor voluntarily created an indebtedness in Ohio by giving a guaranty to an Ohio resident; (2) the Ohio default by the debtor would not have arisen in Ohio had the guarantor not signed the guaranty; and (3) the guarantor had actively participated in negotiating the underlying obligation and the guaranty thus creating a substantial connection with Ohio and making the exercise of jurisdiction over the debtor reasonable under the Due Process Clause.[7] *Id.* at 920–921.

*Guirlinger, National Can,* and *Reliance Elec.* all had at least one party residing in the forum state. Unlike these cases, in the instant case, very few contacts exist with Ohio. The creditor, Mustang, the debtor, Sound, and the

---

**7.** Other courts have found jurisdiction over nonresident guarantors under similar factual scenarios in which at least one party was a resident of the forum. See *Mellon Bank (East) PSFS, NA v. Farino* (C.A.3, 1992), 960 F.2d 1217 (plaintiff lender was resident of the forum state; guarantors actively negotiated both the underlying loans and the guaranties, and they had ownership interest in the debtors); *Forsythe v. Overmyer* (C.A.9, 1978), 576 F.2d 779 (plaintiff creditor was resident of forum state; guarantor had ownership interest in debtors and actively negotiated agreements).

guarantor, Phillips, all reside in Texas. The guaranty was executed in Texas, it covered a Texas underlying obligation, and the guaranty was to be performed in Texas. The court notes that Phillips did "actively participate" as president of the Sound defendants in creating both the underlying obligation and the guaranty; the underlying obligation funded work in Lucas County. However, a corporate officer who has limited contact with the forum state while carrying out corporate duties does not become subject to jurisdiction in his or her personal capacity. *Arkansas Rice Growers Coop. Assn. v. Alchemy Industries, Inc.* (C.A.8, 1986), 797 F.2d 565, 574. Even if one or more of the principals had resided in Ohio, Mustang has failed to prove and the record does not reflect that Phillips had a financial interest in Sound. The financial interest of the guarantors in *National Can* was critical to the court's decision that personal jurisdiction was proper in that case. *National Can,* 674 F.2d at 1137–1138. Thus, this court finds that the first and third prongs of the *Southern Machine* test are not satisfied here. Because no party resides in Ohio and because the record indicates that Phillips does not have a financial interest in Sound, the court finds that Phillips did not purposely avail himself of acting in Ohio and, thus, has no substantial connection with Ohio that would make the exercise of jurisdiction over him in this court reasonable.

This conclusion is supported by the result reached in *First Sec. Bank v. McMillan* (W.D.Mich.1985), 627 F.Supp. 305. In that case, despite the creditor's being a resident of the forum state, Michigan, the court determined that the Texas guarantor, named Ronald McMillan, had not purposely availed himself of acting in Michigan by guaranteeing the debt of a Texas debtor, named Mary McMillan. In that case, the creditor failed to establish where the guaranty was executed, where the money from the underlying obligation was to be used, or for what purpose it was to be used. *Id.* at 309–310. Despite the court's acknowledging that the contract provided a link between the guarantor and the forum, the court held that there was no indication that McMillan had a significant enough interest in the proceeds of the debt to foresee being hauled into court in Michigan. See, also, *Bond Leather Co.,* 764 F.2d 928 (creditor was forum state resident; no jurisdiction when the guarantor was a passive participant and would not benefit from the transaction).[8]

---

**8.** Other cases finding insufficient contacts between nonresident guarantors and the forum states are *Arkansas Rice Growers,* 797 F.2d 565 (creditor was forum state resident; nonresident guarantors were passive and did interject themselves into the negotiations of any obligation); *Lantz v. Private Satellite Television, Inc.* (E.D.Mich.1994), 865 F.Supp. 407, 411 (creditor was forum state resident; no indication that nonresident guarantors who were limited partners in nonresident debtor had any control or knowledge of the business of the debtor).

The court also finds that it would reach the same result (*i.e.,* the Due Process Clause does not permit the exercise of jurisdiction over Phillips) were the court to employ the more traditional due process review applied in the Sixth Appellate District and used by this court in *Floyd P. Bucher & Sons, Inc. v. Spring Valley Architects* (1996), 85 Ohio Misc.2d 5, 12–13, 683 N.E.2d 875, 879–880. See *Hammill,* 82 Ohio App.3d at 376, 612 N.E.2d at 476–477, citing *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 475–477, 105 S.Ct. 2174, 2183–2185, 85 L.Ed.2d 528, 542–544. First, Phillips does not have the requisite "minimum contacts" with Ohio because he created no personal ongoing obligations in Ohio when he executed the guaranty and would not, under normal circumstances, personally seek the benefits and protections of the laws of Ohio to enforce any obligation against Mustang arising under the guaranty. Second, the exercise of jurisdiction over Phillips would "offend traditional notions of fair play and substantial justice" because (1) the burden on him, a Texas resident, posed by litigating in this forum would be great; (2) Ohio's interest in adjudicating a Texas guaranty agreement is small; (3) Mustang's interest in obtaining convenient and effective relief favors Texas because all parties reside there; (4) relief in this forum would be less efficient than in Texas; and (5) the interstate social policy interest favors resolution in Texas. See *Burger King,* 471 U.S. at 476–477, 105 S.Ct. at 2184–2185, 85 L.Ed.2d at 543–544.

## III. *CONCLUSION*

Based on the foregoing, the court finds that it should refrain from exercising personal jurisdiction over defendant Phillips. Accordingly, the court shall grant Phillips's Civ.R. 12(B)(2) motion to dismiss.

*Judgment accordingly.*