McCormick et al. *v.* Haley et al.

[Cite as McCormick v. Haley (1971), 29 Ohio Misc. 97.]

(No. 239315—Decided October 4, 1971.)

Common Pleas Court of Franklin County.

*Messrs. Glander, Brant, Ledman & Newman* and *Mr. Charles E. Brant*, for plaintiffs.
*Mr. Michael P. Graney*, for defendant, Western Research Lab., Inc.
*Mr. Collis Gundy Lane*, for defendant, Richard K. Haley, D. O.

Williams, J. Defendant Western Research Laboratories (hereinafter referred to as "defendant") has moved to quash service of summons upon it on the basis of lack of jurisdiction over its person. Defendant was served pur-

suant to the provisions of Civil Rule 4.3 (formerly R. C. 2307.381 *et seq.*), the current "long-arm" provision of the Ohio service of process laws. There is no claim by defendant that the mechanics of service of process were not followed. The defendant's sole claim is that it is not amenable to service of process under Rule 4.3 on the claims asserted against it in plaintiff's amended complaint.

The claims stated against defendant arise out of the death of plaintiff's decedent as a result of taking drugs manufactured by defendant. Those drugs were prescribed for her by the other defendant, Dr. Richard K. Haley. Claims of negligence, misrepresentation and breach of warranty are asserted by plaintiff against the defendant-manufacturer.

Civil Rule 4.3 provides, in pertinent part, as follows:

"(A) When service permitted.

"Service of process may be made outside of this state, as provided herein, in any action in this state, upon a person who at the time of service of process is a nonresident of this state or is a resident of this state who is absent from this state. The term 'person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim which is the subject of the complaint arose, from the person's:

"(1) Transacting any business in this state;

"(3) Causing tortious injury by an act or omission in this state * * *;

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;

"(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the

goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; * * *."

Ordinarily this would be the type motion that the court would rule on summarily, but because of the dearth of Ohio case law and interpretation of the rule, a complete analysis seems warranted at this time.

The so-called "long-arm" provisions have had a rather stormy, if not colorful, history. Over the years, the courts seemed to have raised three questions with varying emphasis on the importance of those questions. Succinctly stated, the questions are as follows:

(1) Would the application of the provision offend traditional notions of fair play and substantial justice?

(2) Was the business transacted within the state a purposeful act on the part of the defendant?

(3) Could the defendant have reasonably expected the result by putting his product into the flow of commerce?

As defendant states in the first paragraph of its memorandum in support of its motion to dismiss, the question is whether defendant has sufficient "minimum contacts" with the state of Ohio, so as to permit an Ohio Court to exercise *in personam* jurisdiction over it. Civil Rule 4.3(A); *International Shoe Co.* v. *Washington* (1945), 326 U. S. 310, 90 L. Ed. 95; *McGee* v. *International Life Insurance Co.* (1957), 355 U. S. 220, 2 L. Ed. 2d 223; *Hanson* v. *Denckla* (1958), 357 U. S. 235, 2 L. Ed. 2d 1283.

Plaintiff contends that on the basis of the facts alleged in his amended complaint, the admissions contained in defendant's answers to interrogatories, and upon the law, that defendant has those minimum contacts and that it is amenable to service under Rule 4.3.

As revealed by the answers to interrogatories defendant, Western Research Laboratories, Inc., is a Colorado Corporation with its principal place of business in Colorado. Its business is the manufacture and sale of drugs.

Those answers to interrogatories also reveal the following contacts with the state of Ohio:

"(1) Visits to Ohio by defendant's officers and employees.

"On October 5 and 6, 1966, defendant's president, L. C. Tobin, and vice-president, E. J. Morgenstern, made a business trip into Ohio, for the purpose of contacting customers of defendant. One of those contacted was the other defendant, Dr. Richard K. Haley.

"In March, 1968, defendant's public relations man, Andrew H. Loats, spent a week in Ohio. Defendant's sales were all to physicians, and during this week Mr. Loats visited some 12 customers in six Ohio cities and attempted to contact other prospective customers throughout the state.

"(2) Regular and systematic solicitation of business.

"One Kenneth Pemberton, described by defendant as a 'traveling sales person' who is authorized to solicit orders on behalf of defendant, made regular trips into Ohio to solicit orders for defendant's drugs. Between June 1 and September 25, 1970, Pemberton spent a total of 38 working days (out of a possible 101) in Ohio contacting some 43 Ohio customers and prospective customers. In fact, as the affidavit of Collis Gundy Lane, attorney for defendant Haley, shows Mr. Pemberton was in Ohio, soliciting on behalf of Western Research Laboratories earlier than June 1, 1970.

"(3) Correspondence with Ohio residents.

"Defendant's answer to interrogatory No. 10, while incomplete, makes it clear that defendant has corresponded with its Ohio customers.

"(4) Telephone conferences with Ohio residents.

"Defendant's answer to interrogatory No. 11 is that it 'keeps no records' of telephone conversations. Not specifically answered by defendant is the main question contained in interrogatory No. 11, 'Were there any telephone conversations held between any officer, agent or employee of yours and any Ohio citizen, resident or customer (individual or corporate) in the past seven years?' Implicit, however, in defendant's response is the fact that such tele-

phone conversations did take place, and indeed the defendant Haley testified on deposition to one telephone conversation with defendant, and his testimony was such as not to preclude the fact that he might have had other conversations with defendant.

"(5) During 1969 defendant had more than 30 physician-customers in Ohio, and according to exhibit B to defendant's answers to interrogatories, received and filled approximately 195 separate orders from these customers during 1969. Total sales during 1969 to defendant's Ohio customers were in excess of $86,000.00.

"(6) During 1970, defendant received and filled some 174 separate orders from its Ohio customers, with sales totaling more than $73,000.

"(7) Defendant's products were shipped directly into Ohio via the U. S. Mail and parcel post.

"(8) Defendant caused price lists and certain other literature to be distributed to its Ohio physician-customers.

"(9) Defendant delivered samples of new products (of an unspecified quantity) to its physician-customers."

From defendant's answers to interrogatories it is seen that defendant has had regular and repeated contacts with the state of Ohio in the furtherance of its overall business purpose—that of selling drugs manufactured by it. Its officers, employees and salesmen have made repeated business trips into Ohio to promote the sale of its products. Correspondence and telephone conversations with Ohio residents have occurred. Pricing and other literature have been provided to defendant's Ohio customers. And defendant's efforts have not been in vain—sales of more than $160,000 during 1969-1970 amply demonstrate the success of defendant's efforts in Ohio.

Having exercised the privilege of selling its drugs in Ohio, with knowledge that its physician-customers would further dispense those drugs to Ohio patients (Dr. Haley testified on deposition that he dispensed drugs to some 4000 patients *per month* in the operation of his weight reducing clinic), defendant now seeks to avoid being subject

to suit in an Ohio court of law by claiming that it is not amenable to service of process issued pursuant to Civil Rule 4.3(A).

Only a few Ohio cases have discussed the applicability of R. C. 2307.382 *et seq.* to particular fact situations. One of them was *American Compressed Steel Corp.* v. *Pettibone Mulliken Corporation* (S. D. Ohio 1967), 271 F. Supp. 864. In that case, an action for breach of contract, the court noted the following contact with Ohio: (1) visits into Ohio by defendant's vice-president and by a manufacturer's representative authorized to solicit interest in defendant's products in Ohio and other states; (2) the execution of the contract by plaintiff in Ohio; (3) the expected use of the machine in Ohio; (4) and correspondence and long distance telephone conversations. The court held that the defendant's activities in Ohio amounted to "transacting any business in this state" and were "well above the minimum contacts to the end that the maintenance of this suit * * * does not offend traditional notions of fair play and substantial justice."

In *Seilon, Inc.,* v. *Brema, S. p. A.* (N. D. Ohio 1967), 271 F. Supp. 516, a showing that defendant sent some of its employees into Ohio for training was held sufficient to amount to "transacting any business in this state."

In *Busch* v. *Service Plastics, Inc.* (N. D. Ohio, 1966), 261 F. Supp. 136, which is the only other Ohio case to discuss the phrase "transacting any business in this state," the sole contact with Ohio was that it sold plastic jug handles to an Ohio corporation. In a suit by a person injured when one of the jug handles broke in Ohio, it was held that, on those facts, it could not be said that the defendant was "transacting any business" in Ohio. The court notes, however, in that case that there was no evidence that any employee, agent or representative of the defendant had *ever* been in Ohio at any time, for any reason. In the instant case, the defendant's contacts with Ohio are far greater in the case at bar than those of the defendant in the *Busch* case, and are nearly identical in kind with

those of the defendant in the *American Compressed Steel Corporation* case.

Two cases have also discussed subsections (4) and (5) of R. C. 2307.382 [now subsections (4) and (5) of Civil Rule 4.3(A)]. Those cases (*Busch* v. *Service Plastics, Inc., supra,* and *Stewart* v. *Bus and Car Company* (N. D. Ohio, 1968), 293 F. Supp. 577) both sustained the exercise of jurisdiction upon a finding that the defendant "derives substantial revenue from goods used" in Ohio.

In *Busch* v. *Service Plastics, Inc.,* it was held that proof that a foreign corporation sold between $100,000 and $200,000 worth of plastic jug handles to an Ohio corporation annually satisfied the "derives substantial revenue" test. In passing, the court also noted that another of the tests set forth in subsections (4) and (5) of Civil Rule 4.3, the "persistent course of conduct" test

"* * * might be satisfied by a showing that the non-resident or foreign corporation continuously and not sporadically relied on and benefited one or more *independent* sales or service representatives operating in Ohio."

In the *Busch* case defendant's answers to interrogatories revealed "that it has no employees in Ohio; that it has no manufacturer's representative or other agent in Ohio." In the instant case, the defendant's "traveling sales person," Kenneth Pemberton, regularly solicits business in Ohio.

So, too, in *Stewart* v. *Bus and Car Company* (N. D. Ohio, 1968), 293 F. Supp. 577, the mere showing that the defendant sold two busses to an Ohio bus company for a total of approximately $90,000 was held sufficient to satisfy the "derives substantial revenue" test in a suit brought by a passenger on a bus sold to a California bus company which was being driven through Ohio when the injury occurred.

Defendant argues in its memorandum in support of its motion to quash that only .0379 percent of defendant's *profit* is obtained from sales within the state of Ohio. The test of Civil Rule 4.3(A) (4) and (5) is not whether profits

are substantial but whether its *revenue* derived from Ohio sales is substantial. Revenue and profit are two entirely different things. If defendant's "profit" argument be accepted, a foreign corporation could sell 100% of its goods in Ohio and escape the jurisdiction of Ohio courts if it showed no profit on the sales.

Despite the relative dearth of reported Ohio cases determining whether specific activities of specific nonresidents fall within specific subsections of the Ohio "long-arm" statute, there are many cases from other states sustaining the exercise of *in personam* jurisdiction under the "long-arm" statutes in force there, on facts analogous to those in the case at bar.

Thus, in *Donley* v. *Whirlpool Corporation* (E. D. Michigan, 1964), 234 F. Supp. 869, the court relied upon a showing that defendant's sales in Michigan amounted to $247,000 over a three-year period. See, also, *Chovan* v. *E. I. DuPont deNemours & Co.* (E. D. Michigan, 1963), 217 F. Supp. 808, where there were sales of $130,000 annually.

In *Calagaz* v. *Calhoon* (5th Cir., 1962), 309 F. 2d 248, the defendant was found amenable to the Alabama statute by reason of his having made one trip into the state and his having sent correspondence and telegrams into Alabama.

In *Gray* v. *American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N. E. 2d 761, the defendant's negligent manufacture in Ohio of a product which it reasonably could have expected to have been used in Illinois was held to be the "commission of a tortious act within this state" under the Illinois statute. The Illinois Supreme Court said:

"As a general proposition, if a corporation elects to sell its products for ultimate use in another state, it is not unjust to hold it answerable for any damage caused by defects in those products."

In *Singer* v. *Walker* (1965), 250 N. Y. S. 2d 216, a case where the nonresident defendant shipped its geological hammer marked "unbreakable" into New York to a New York dealer, from whom it was purchased by the New York plaintiff's aunt, and the plaintiff lost an eye

when the hammer shattered while he was using it in Connecticut, the New York court held that the defendant had committed a tortious act in New York—namely, the circulation in New York of the dangerous instrument mislabeled.

In *Phillips* v. *Hooker Chemical Corp.* (5th Cir., 1967), 375 F. 2d 189, where a New York Corporation's Florida representative was a Georgia resident who spent about 40-50% of his time in Florida promoting the sale of the corporation's product, the New York corporation was found to be engaging in business in Florida under the Florida "long-arm" statute.

Visits into the state by defendant's employees and the activities in the state of a manufacturer's representative in soliciting a sales contract were held sufficient to satisfy the "transacting any business" test of the Arkansas statute in *Waukesha Building Corporation* v. *Jameson* (W. D. Ark., 1965), 246 F. Supp. 183.

In *Lichina* v. *Futura, Inc.* (D. C. Colo., 1966), 260 F. Supp. 252, visits into the state by defendant's salesmen and the inspection of ski tows installed in Colorado constituted the doing or transacting of business under the Colorado "long-arm" statute.

In a recent case, *International Harvester* v. *Hendrickson Mfg. Co.*, 459 S. W. 2d 62, the Supreme Court of Arkansas, has included component parts of trucks sold in Arkansas as being sufficient nexus to apply the long-arm statutes. Syllabi 1 and 3 read as follows:

"(1) Where for past several years a substantial number of trucks sold and used in Arkansas contained component parts designed and manufactured by Illinois corporation, which was not qualified to do business in Arkansas and had no local agent for service, corporation was subject to extrastate service of process under long-arm statute providing for jurisdiction if defendant derives substantial revenue from goods consumed in Arkansas.

"(3) Criteria for jurisdiction over nonresident manufacturers in products liability actions should be practical considerations of justice, convenience and reasonableness in the particular case and the standard of fair play, and

substantial justice is not to be utilized solely for benefit of nonresident defendants, but rather it is an equal guarantee, to consumer-plaintiffs of a just, convenient and reasonable forum in which to try their suit.''

These cases, which all involved activities in the forum state which are essentially no different in kind from the defendant's activities in Ohio in the case at bar, have one thing in common: In each of those cases the defendant had purposefully engaged in a course of conduct designed to produce sales of its product in the forum state. And in each of those cases the defendant was held answerable for its conduct in that same state, upon a finding that its local activities in furtherance of its business purpose were sufficient to subject it to the *in personam* jurisdiction of the court.

Returning to the three questions propounded with regard to this defendant, there is no doubt that each of them must be answered in favor of the plaintiff and against the defendant.

A gross sales of $160,000.00 in 1969-1970; visits to Ohio by defendant's officers and employees; regular solicitation of orders and the cultivation of defendant's Ohio customers by its ''traveling sales person,'' the use by defendant of the mails to ship its drugs into the state, etc., all demonstrate the defendant's business activity in Ohio.

Therefore, the motion to quash is not well taken and the same is overruled.