## Cincinnati Art Galleries
### v.
### Fatzie
*[Cite as 8 AOA 4]*

*Case No. C-890726*
*Hamilton County, (1st)*
*Decided December 19, 1990*

Bruce A. Hunter, 1400 Tri-State Building, 432 Walnut Street, Cincinnati, Ohio 45202, for Plaintiff-Appellee.

Jeffrey A. Tessel, Katz, Teller, Brant & Hild, 36 East Fourth Street, Suite 714, Cincinnati, Ohio 45202, for Defendants-Appellants.

*Per Curiam.*

The defendants-appellants, Donald F. Fatzie ("Fatzie") and Donzico Antiques and Imports ("Donzico"), appeal the trial court's judgment in favor of the plaintiff-appellee, Cincinnati Art Galleries. The decision of the trial court is affirmed as modified.

In May of 1988, Fatzie noticed in a trade magazine an advertisement in which the plaintiff, an art gallery, sought to purchase the work of various artists. Fatzie telephoned the plaintiff and offered to sell it an original watercolor painting by F. S. Cozzens, one of the artists specified in the advertisement. The plaintiff was interested in the proposition and requested that Fatzie send photographs and photostatic copies of the painting. The plaintiff received the desired materials, and when it was unable to determine if the work at issue was a watercolor painting, Fatzie offered his personal assurance that the painting was indeed a watercolor.

The parties thereafter entered into an agreement, the terms of which required the plaintiff to pay $7,500 for the artwork. The parties also agreed that the plaintiff was to be afforded a one-day right of refusal so that it could inspect the artwork upon receipt and rescind the transaction if it was dissatisfied for any reason. Two weeks after the plaintiff forwarded the purchase price to Fatzie, it received the artwork. Upon examination, the plaintiff determined that the piece was not a watercolor but rather was an inexpensive print or copy. When the plaintiff's immediate attempts to contact Fatzie were unsuccessful, the plaintiff exercised its right of refusal and returned the print by overnight delivery to Fatzie's place of

business. The receptionist, Barbara Davis, refused, however, to accept the delivery. Apparently, Fatzie had left town on vacation and had instructed Davis not to sign for any packages that were sent by the plaintiff. After a few days, the plaintiff was able to establish contact with Fatzie, who instructed the plaintiff to return the artwork. The delivery, however, was again refused and the parties were unable to resolve the dispute.

The plaintiff subsequently filed a complaint against the defendants in the Hamilton County Court of Common Pleas, asserting claims for breach of contract and fraud. The defendants' motion to dismiss for lack of personal jurisdiction was denied by the trial court. At the ensuing bench trial, the court found merit in the plaintiff's two claims and entered judgment in its favor. The defendants then filed this timely appeal.

In their first assignment of error, the defendants allege the trial court erred in overruling their motion to dismiss for lack of personal jurisdiction. Relying on their status as residents of Maryland, they argue that their actions in dealing with the plaintiff did not constitute the "minimum contacts" necessary for an Ohio court to obtain in personam jurisdiction over them. This claim is without merit.

Personal jurisdiction over a nonresident defendant is governed by R.C. 2307.382, which states in pertinent part:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state."

Similarly, Civ. R. 4.3(A)(1) authorizes out-of-state service of process on a defendant who is "*** [t]ransacting any business in this state[.]"

The first task of this court is to determine whether R.C. 2307.382(A)(1) authorized the state of Ohio to assume jurisdiction over the instant defendants. In the case sub judice, Fatzie, by means of the mail and the telephone, engaged in preliminary negotiations with the plaintiff, an Ohio resident, concerning the artwork. The parties eventually entered into an agreement which allowed the plaintiff to purchase the artwork for $7,500. Fatzie cashed the plaintiff's check for that amount and then shipped the artwork to the agreed destination in Ohio. When problems arose concerning the authenticity of the artwork, the parties engaged in more discussions.

Based on the facts of this case and the settled proposition of Ohio law that R.C. 2307.382(A)(1) was intended to extend jurisdiction to the constitutional limits, *Creech v. Oral Roberts* (C.A. 6, 1990), 908 F.2d 75, we hold that the defendants transacted business in this state so as to render them subject to the jurisdiction of the Ohio courts. In arriving at this decision, we are mindful that the defendants maintained no physical presence in Ohio, but this fact alone does not preclude a determination that they transacted business in this state. *Kentucky Oaks Mall Company v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St. 3d 73, 559 N.E.2d 477.

Having determined that Fatzie's conduct falls within the purview of R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1), we must next decide whether the assertion of personal jurisdiction by an Ohio court over the defendants comports with the Due Process Clause of the Fourteenth Amendment. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair-play and substantial justice." *International Shoe Co. v. State of Washington* (1945), 326 U.S. 310, 316, 66 S. Ct. 154, 158.

In deciding whether a single act or transaction of a defendant is within the due process limits of a "long-arm" statute, the court in *Southern Machine Co. v. Mohasco Industries, Inc.* (C.A. 6, 1968), 401 F.2d 374, 381, set forth a three-part analysis. In accordance with this approach, the following criteria are to be considered:

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

With regard to the first criterion, the record indicates that Fatzie telephoned the plaintiff and offered to sell it a watercolor painting; that the parties contracted for the sale of the artwork; that the artwork was not a "watercolor" painting but was instead an inexpensive print or copy; that Fatzie deliberately

frustrated the plaintiff's attempts to return the artwork and to exercise its right to rescind the transaction; that Fatzie was uncooperative in resolving the situation; and that Fatzie refused to return the purchase price to the plaintiff. The net effect of Fatzie's actions resulted in the plaintiff paying $7,500 for a piece of art which was touted by Fatzie as a watercolor but which in reality turned out to be a print worth approximately $50. We conclude, under these circumstances, that the defendants acted purposefully and reasonably foresaw that the instant transaction would have consequences in Ohio. *Onderik v. Morgan* (C.A. 6, 1989), 897 F.2d 204.

The second phase of the *Southern Machine* analysis seeks to determine whether the cause of action arose from the defendant's activities in the forum state.

In the instant case, the plaintiff asserted two causes of action: "breach of contract and fraud." With respect to the breach-of-contract claim, we hold that the defendants' transaction of business in Ohio -- "[their] entering of a contractual relationship with an Ohio corporation -- is necessarily the very spoil from which the action for breach grew." *In-Flight Devices Corp. v. Van Dusen Air Inc.* (C.A. 6, 1972), 466 F.2d 220, 229. Likewise, the plaintiff's claim of fraud has its roots in a commercial relationship between the parties and relates to commercial aspects of the underlying transaction. Thus, even though the claim of fraud sounds in tort, jurisdiction of the Ohio court may still be predicated, under R.C. 2307.382(A)(1), upon the defendant's transaction of business within the state. *In-Flight Devices Corp., supra.*

The final criterion of the *Southern Machine* analysis requires that the consequences caused by the defendants have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendants reasonable.

An initial consideration centers upon the extent of Ohio's interest in this controversy. There can be no doubt that a state has an interest in resolving a suit brought by one of its residents. *In-Flight Devices Corp., supra.* Further, Ohio embraces a policy which seeks to secure to its businessmen the benefit of their bargains. In the instant case, we believe that the assertion of jurisdiction over the defendants was fair. Fatzie purposefully entered into a contractual agreement with the plaintiff and his actions throughout the episode would hardly support his claim of surprise at being forced to defend against the instant suit in Ohio. The defendants have presented no compelling justification which would preclude the exercise of personal jurisdiction over them by an Ohio court. *Onderik v. Morgan* (C.A. 6, 1989), 897 F. 2d 204.

Accordingly, because we have concluded that all three of the criteria of the Southern Machine test have been satisfied, we hold that the defendants were subject to personal jurisdiction in the state of Ohio and that the trial court properly overruled their motion to dismiss.

In their second assignment of error, the defendants allege the trial court erred in granting judgment against them for punitive damages. This assignment is overruled because the record in the instant case evidences all the elements of the defendants' fraud and clearly demonstrates that their wrongdoing was gross and egregious. *Charles R. Combs Trucking, Inc. v. International Harvester Co.* (1984), 12 Ohio St. 3d 241, 466 N.E.2d 883.

Although we conclude that punitive damages were warranted by the facts of the case, we are not convinced that the amount ($75,000) of the award was proper.

Civ. R. 54(C) reads in pertinent part that:
"[A] demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial."

Clearly, the damage award could not exceed the prayer that was in effect on the sixth day prior to trial. *Bishop v. Grdina* (1985), 20 Ohio St. 3d 26, 485 N.E.2d 704.

In the case *sub judice*, the plaintiff, in its complaint, sought $8,000 in punitive damages. The plaintiff made no attempt to amend the prayer in the complaint until the final day of the trial. Obviously, such an amendment was untimely and was violative of Civ. R. 54(C). Accordingly, the award of punitive damages in favor of the plaintiff is reduced to $8,000, the amount prayed far in its complaint.

The judgment of the trial court, as modified, is affirmed.

KLUSMEIER, P.J., HILDEBRANDT and GORMAN, J.J.