ESTATE OF POOLE et al., Appellants,

v.

GROSSER et al., Appellees.

[Cite as *Estate of Poole v. Grosser* (1999), 134 Ohio App.3d 386.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970621.

Decided June 25, 1999.

*Donald C. Moore, Jr.,* for appellants.

*Montgomery, Rennie & Jonson, G. Todd Hoffpauir* and *George D. Jonson,* for appellee Timothy T. Grosser, M.D.

*Rendigs, Fry, Kiely & Dennis* and *Jill T. O'Shea,* for appellees Jose D. DeMoya, M.D., and Maysville Surgical Associates, P.S.C.

*Weber & Rose, P.S.C.,* and *Martin A. Arnett; McCaslin, Imbus & McCaslin* and *Phillip J. Marsick,* for appellee Hospital Corporation of Kentucky, d.b.a. Meadowview Regional Hospital.

---

DOAN, Presiding Judge.

Plaintiffs-appellants, the estate of Isabelle Poole, deceased, and Marion F. Poole, the decedent's husband, filed a suit against defendants-appellees, Timothy T. Grosser, M.D., Jose D. DeMoya, M.D., Maysville Surgical Associates, P.S.C., and Kentucky Hospital Corporation, d.b.a. Meadowview Regional Hospital. In their complaint, they alleged causes of action for medical malpractice, wrongful death, survivorship and loss of services. Appellees, who are residents of the state of Kentucky, filed separate motions to dismiss in which they argued that the Ohio court lacked personal jurisdiction over them.

The record shows that on June 22, 1995, Isabelle Poole, a resident of Ripley, Ohio, arrived at Meadowview Regional Hospital in Kentucky, complaining of abdominal pain. She was treated by Dr. Grosser, her family physician since 1984, who resided and practiced medicine in Maysville, Kentucky. He was

licensed only in Kentucky, and he never maintained a business office or treated patients in Ohio. Because Maysville is located just across the river from several small towns in Ohio in which there are no family physicians, Grosser treats some Ohio patients. In 1992, he took over the practice of an elderly Ripley, Ohio doctor, at which time the amount of his Ohio patients rose to about forty percent of his practice. Grosser maintained phone listings in regional Ohio and Kentucky phone directories. He testified that he instructed his office staff to purchase the minimum phone listing and that he had never seen a copy of any Ohio telephone listing prior to his deposition. Samples of some of the directories for several years prior to the litigation showed that he maintained a small advertisement.

Mrs. Poole had gone to Meadowview because Grosser practiced there. Kentucky Hospital Corporation, which operated Meadowview, was licensed to do business only in Kentucky and does not provide medical services in Ohio. It, too, maintained small advertisements in phone directories covering areas in both Ohio and Kentucky. Appellants also presented advertisements for Meadowview Hospital regarding childbirth and special clinics that appeared in a small Ripley, Ohio newspaper on three occasions. They also presented a brochure from the hospital that was mailed to an individual in Ohio, which indicated that the hospital served two southern Ohio counties in addition to several counties in Kentucky.

Grosser eventually consulted with DeMoya, a surgeon practicing under the business name Maysville Surgical Associates, P.S.C. DeMoya also lived and practiced in Kentucky. He testified that "a good amount" of his patients came from Ohio but that they constituted less than fifty percent of his practice. He did not have an office in Ohio, but, like Grosser, he maintained listings in Ohio and Kentucky phone directories in the form of small advertisements. He testified that he had not seen the listings and that he did not know how much he had paid for them.

DeMoya recommended that Mrs. Poole undergo surgery. Her husband then requested that she be transferred to Jewish Hospital in Cincinnati, Ohio, and DeMoya asked a member of the Meadowview staff to contact an ambulance service. Southern Ohio Ambulance Service transported her to Jewish Hospital. A nurse from Meadowview accompanied Mrs. Poole in the ambulance and monitored her vital signs. Mrs. Poole was then treated at the Ohio hospital, where she subsequently died.

The trial court granted appellees' motions to dismiss, finding that appellees did not have sufficient minimum contacts with the state of Ohio to justify an Ohio court in assuming jurisdiction over them. This appeal followed. In their sole assignment of error, appellants argue that the trial court erred in granting appellees' motions to dismiss for lack of personal jurisdiction. They contend that appellees had sufficient minimum contacts with the state of Ohio to justify an

Ohio court in assuming jurisdiction under Ohio's long-arm statute, and that the assumption of jurisdiction would not violate appellees' right to due process. We hold that this assignment of error is not well taken.

 While plaintiffs are generally entitled to have the factual allegations sustaining jurisdiction construed in their favor, they nevertheless bear the burden of making a prima facie showing of personal jurisdiction. *Sherry v. Geissler U. Pehr, GmbH* (1995), 100 Ohio App.3d 67, 72, 651 N.E.2d 1383, 1386; *Grossi v. Presbyterian Univ. Hosp.* (1980), 4 Ohio App.3d 51, 53, 4 OBR 100, 102–103, 446 N.E.2d 473, 475–476. In determining whether an Ohio court has personal jurisdiction over a nonresident defendant, the court must apply a two-part test. It must determine (1) whether Ohio's long-arm statute, R.C. 2307.382, and the complementary Civil Rule, Civ.R. 4.3, confer jurisdiction, and (2) whether granting jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048, 1051.

R.C. 2307.382(A) provides:

"A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

" * * *

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."

 Likewise, Civ.R. 4.3(A)(4) provides for service of process out of state on a nonresident defendant under the same circumstances. Consequently, the statute and the rule both require a finding that (1) an act or omission outside the state caused tortious injury in Ohio, and (2) the defendant regularly conducted activity in Ohio. *Grossi, supra,* 4 Ohio App.3d at 53, 4 OBR at 102–103, 446 N.E.2d at 475; *Weiskopf Industries Corp. v. Hidden Valley Towel, Inc.* (Dec. 22, 1994), Cuyahoga App. No. 67436, unreported, 1994 WL 716342.

All appellees' allegedly negligent actions occurred in Kentucky. Appellants argue that the tortious injury occurred in Ohio simply because the defendant died here. No Ohio court has adopted this "portable tort" theory, and several courts from other jurisdictions have explicitly rejected it. See *Wright v. Yackley* (C.A.9, 1972), 459 F.2d 287, 289–290; *Kennedy v. Ziesmann* (E.D.Ky.1981), 526 F.Supp. 1328, 1331; *Jackson v. Wileman* (W.D.Ky.1979), 468 F.Supp. 822, 824–825. See, also, *Bell v. Franchise World Headquarters* (Nov. 30, 1995), Cuyahoga App. No.

68444, unreported, 1995 WL 705261. This court is inclined to reject it as well, particularly in regard to a medical malpractice claim, but we have some concerns regarding when the tort of wrongful death is completed. Nevertheless, we need not reach that issue, because we conclude that appellants failed to demonstrate that appellees met the second part of the test for personal jurisdiction.

■ The record unequivocally shows that appellees did not derive substantial revenue from services rendered in Ohio. Thus, personal jurisdiction over appellees depends on a finding that they regularly did or solicited business or engaged in any other persistent course of conduct in Ohio. Such a finding requires more than sporadic contact. See *Jackson v. State St. Bank & Trust Co.* (1996), 110 Ohio App.3d 388, 395, 674 N.E.2d 706, 710–711; *McCormick v. Haley* (C.P.1971), 29 Ohio Misc. 97, 100–104, 58 O.O.2d 223, 225–227, 279 N.E.2d 642, 644–646; *Busch v. Serv. Plastics, Inc.* (N.D.Ohio 1966), 261 F.Supp. 136, 140–141. For example, a plaintiff may prove a regular doing or solicitation of business by showing that a nonresident corporation has maintained an office in Ohio or employed a sales or service force in Ohio. A plaintiff may prove a persistent course of conduct by showing that the nonresident corporation has continuously relied on and benefited from one or more independent sales or service representatives operating in Ohio. *Jackson v. State St. Bank, supra,* at 397–398, 674 N.E.2d at 710–711; *Busch, supra,* at 141.

Appellants argue that because appellees maintained telephone listings in Ohio for Ohio patients, an Ohio court can maintain personal jurisdiction over them. We disagree. In *Kennedy, supra,* 526 F.Supp. 1328, a case involving similar facts, the plaintiff, a Kentucky resident, brought a malpractice suit in Kentucky against a Cincinnati, Ohio doctor. Kentucky's long-arm statute contains language identical to that in R.C. 2307.382(A)(4). Though the defendant had treated Kentucky patients in the past, he practiced only in Ohio. He was licensed to practice medicine only in Ohio, and he was affiliated with an Ohio hospital. The plaintiff had been referred to the defendant by her doctor in Kentucky, who had worked with the defendant in the past. The plaintiff went to the defendant's office in Ohio, and the procedure that she claimed was negligently performed was completed in Ohio. The plaintiff argued that the defendant's phone listings in a phone book covering northern Kentucky and his phone calls to Kentucky were sufficient to invoke Kentucky's version of R.C. 2307.382(A)(4). The court rejected that argument, stating:

"Nor may the mere carrying of a telephone listing, without additional advertising or other solicitation, amount in and of itself to regular solicitation of business such as to make a physician situated as is the defendant subject to suit under the long-arm statute of a neighboring state where the directory is distributed. In a well-reasoned opinion also involving medical services rendered in Cincinnati to a

resident of a suburban area in another state, Judge Noland of the Southern District of Indiana specifically rejected the argument that the fact that the adjoining areas of the two states were one economic area with a common telephone directory was a sufficient basis for the exercise of personal jurisdiction over a Cincinnati physician for alleged negligent treatment given to a resident of Southeast Indiana. [*Russell v. Bennett,* S.D.Ind. No. IP81–352–C, unreported.]" *Id.* at 1331.

The court went on to discuss the policy reasons for its decision:

"If the Kentucky courts were to exercise personal jurisdiction over every doctor of a metropolitan area in another state who permitted his name to be included in Kentucky telephone directories, or who accepted patients from Kentucky, the result might well be that Kentucky residents would be denied sorely needed medical treatment, especially in the more specialized fields, in Cincinnati or other metropolitan areas." *Id.* at 1331–1332.

We agree with the *Kennedy* court's reasoning. The record demonstrates that the doctors in the present case did nothing more than pay for small advertisements in phone books distributed in Ohio and provide services to Ohio residents who happened to come to them in Kentucky. We do not believe that this is the sort of activity contemplated by the phrases "regularly does or solicits business" and "engages in any other persistent course of conduct." See *Sherry,* 100 Ohio App.3d 67, 651 N.E.2d 1383; *Speck v. Mut. Serv. Life Ins. Co.* (1990), 65 Ohio App.3d 812, 585 N.E.2d 509; *Wright,* 459 F.2d 287; *Jackson v. Wileman,* 468 F.Supp. 822. Compare *Jackson v. State St. Bank,* 110 Ohio App.3d 388, 674 N.E.2d 706 (nonresident corporation provided check-processing services for an insurance company with thousands of Ohio customers); *McCormick,* 29 Ohio Misc. 97, 58 O.O.2d 223, 279 N.E.2d 642 (nonresident defendant regularly solicited orders from Ohio customers through a traveling salesperson and shipped products into the state).

As to Meadowview, appellants presented evidence that it maintained a small advertisement in phone books distributed in Ohio. They also presented evidence that it mailed a brochure into Ohio and took out three advertisements in an Ohio newspaper. But appellants presented no evidence that the hospital conducted these activities on a regular basis. Further, appellants presented evidence that a Meadowview nurse rode in the ambulance to Ohio with the decedent. But nothing in the evidence showed that Meadowview regularly sent staff persons to Ohio or that this event was anything more than an isolated occurrence. In sum, nothing in the record demonstrates the sort of regular, continuous activity required by the long-arm statute to justify Ohio in assuming jurisdiction over the hospital. Consequently, we hold that the trial court did not

err in finding that appellees did not meet the requirements of Ohio's long-arm statute.

Further, we hold that an Ohio court's assertion of jurisdiction over appellees would violate their right to due process. The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which that individual has established no meaningful contacts, ties, or relations. *Burger King v. Rudzewicz* (1985), 471 U.S. 462, 471–472, 105 S.Ct. 2174, 2181–2182, 85 L.Ed.2d 528, 540–541. A state may assert personal jurisdiction over a nonresident defendant if the defendant has certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102; *U.S. Sprint,* 68 Ohio St.3d at 186, 624 N.E.2d at 1053.

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283, 1298. The actions of the defendant in the forum state must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Cincinnati Art Galleries v. Fatzie* (1990), 70 Ohio App.3d 696, 699, 591 N.E.2d 1336, 1338.

Nothing in the record demonstrates that appellees had a substantial enough connection with Ohio to show that they purposely availed themselves of the privileges and benefits of Ohio law, thus making it reasonable for Ohio to assume jurisdiction over them. Appellees could not reasonably foresee that their actions would have consequences in Ohio, nor could they "reasonably anticipate being haled into court there." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 77, 559 N.E.2d 477, 481; *Cincinnati Art Galleries,* 70 Ohio App.3d at 699–700, 591 N.E.2d at 1338. All of the allegedly negligent acts occurred in Kentucky, and Ohio has no substantial interest in adjudicating the dispute. In fact, appellants acknowledged in the trial court that they had also filed suit against appellees in Kentucky, and that they wanted to maintain the suit in Ohio because Ohio law is more favorable to them. Courts discourage this type of forum shopping, and we believe it would be unfair to subject appellees to the burden of litigating in a foreign state solely for this reason. See *U.S. Sprint,* 68 Ohio St.3d at 186–188, 624 N.E.2d at 1053–1054; *Jackson v. State St. Bank,* 110 Ohio App.3d at 402–403, 674 N.E.2d at 715–716;

*Sherry,* 100 Ohio App.3d at 75–76, 651 N.E.2d at 1388. Accordingly, we hold that the trial court did not err in granting appellees' motions to dismiss for want of personal jurisdiction. We overrule appellants' sole assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

HILDEBRANDT and PAINTER, JJ., concur.