OPINION
Plaintiff-appellant, Charles Bosco, appeals from the decision of the Columbiana Court of Common Pleas dismissing his complaint against defendants-appellees, Jack Hodge, Jr. (Hodge) and Oak Crest Farm, LLC (Oak Crest), for lack of personal jurisdiction.
Appellant, an Ohio resident, is in the business of racing horses. In June of 1998, appellant purchased two racehorses, "Tazmaniac" and "Back to the Sixties" from a man named Brent Clark.[1] Clark resides in the State of Utah. Appellant alleges that when he purchased Tazmaniac, appellees owned him and that at all relevant times Clark acted as appellees' agent. Hodge is a resident of the State of Washington and is a member of Oak Crest, which operates a thoroughbred breeding farm in Washington. Appellant claims that upon Tazmaniac's arrival in Ohio, appellant had him examined by a veterinarian who determined Tazmaniac had bone chips in his knee. Appellant stated the bone chips rendered Tazmaniac unsuitable for racing.
Appellant filed his complaint on May 25, 2000, against Clark and appellees alleging he bought two horses, Tazmaniac and Back to the Sixties, based on his reliance on the express and implied warranties made by the defendants. It further alleged that after appellant received the horses, he discovered that Tazmaniac was not of the same quality as the defendants represented and that Tazmaniac was not fit for his purpose of racing. Thus, it alleged the defendants breached their express and implied warranties. The complaint also alleged the defendants intended to defraud appellant. Appellees filed an answer raising lack of personal jurisdiction as a defense. Defendant Clark failed to file an answer or to otherwise respond to appellant's complaint; therefore, the trial court granted a default judgment against him and in appellant's favor.[2]
On May 11, 2001, appellees filed a Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction. In its July 3, 2001 judgment entry, the trial court granted appellees' motion holding that appellees did not have sufficient minimum contacts with Ohio so that they would reasonably anticipate being called into court in this state. Appellant filed a timely notice of appeal from this judgment on July 20, 2001.
Appellant raises one assignment of error, which states:
 "THE COURT OF COMMON PLEAS PREJUDICIALLY ERRED IN HOLDING THE DEFENDANTS DID NOT HAVE SUFFICIENT MINIMUM CONTACTS WITH THIS STATE TO CONFER JURISDICTION UPON ITS COURTS."
Appellant argues the trial court erred in finding that appellees did not have sufficient minimum contacts with the State of Ohio to confer personal jurisdiction on Ohio's courts. He states appellees only have one connection with Ohio: shipping a lame horse to him, an Ohio resident, and failing to disclose that the horse was lame. However, appellant argues his lawsuit is a direct result of this sale. Therefore, he contends the trial court's finding that appellees' contacts with Ohio were "random, fortuitous, attenuated" is unsupported. Appellant argues that Clark acted as appellees' agent throughout the sale of Tazmaniac. Appellant alleges that by entering into a contract with him, appellees purposefully availed themselves of the laws of Ohio. Citing, Wright Internatl. Express, Inc.v. Roger Dean Chevrolet, Inc. (S.D.Ohio 1988), 689 F. Supp. 788, 790. Appellant alleges Clark knew that appellant was an Ohio resident. He further contends appellees sent the bill of sale and certificate of foal to him in Ohio. Appellant argues that by arranging the shipment of Tazmaniac to appellant and by sending the bill of sale and certificate of foal to appellant, appellees conducted purposeful acts directed towards an Ohio resident.
Additionally, appellant argues appellees' acts had a substantial enough connection with Ohio to make the exercise of jurisdiction over them reasonable. He contends he and Clark had numerous telephone calls to discuss the details of the sale, including price negotiations and shipment. In addition, appellant alleges appellees mailed the bill of sale and certificate of foal to him. Appellant cites to Cincinnati ArtGalleries v. Fatzie (1990), 70 Ohio App.3d 696, for support. InCincinnati Art Galleries, the gallery entered into a contract to buy a painting from the defendant. When the gallery received the painting, they discovered it was a print, not an original as they had contracted to purchase. The court held that the defendant, a non-Ohio resident, acted purposefully and that he could reasonably foresee that his action of entering into the transaction with the gallery would have consequences in Ohio; therefore, the exercise of jurisdiction by the Ohio courts was reasonable.
Whether a trial court has personal jurisdiction over a defendant is a matter of law which appellate courts review de novo. Baird Bros.Sawmill, Inc. v. Augusta Const. (June 19, 2000), 7th Dist. No. 98-CA-152, 2000 WL 817068 at *2. In determining whether an Ohio court has personal jurisdiction over a non-resident defendant, the trial court must: "1) determine whether Ohio's long-arm statute and the applicable civil rule confer personal jurisdiction; and 2) determine whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law as guaranteed by theFourteenth Amendment to the United States Constitution." Id.; Goldsteinv. Christiansen (1994), 70 Ohio St.3d 232, 235.
Appellant points out that the trial court did not rule on whether Ohio's long-arm statute is applicable in the case at bar. He contends courts generally determine whether the long-arm statute applies before reaching the issue of whether minimum contacts exist. Therefore, he argues that the trial court, although not mentioning it in its judgment entry, must have found that the long-arm statute did apply since it moved on to determine the issue of minimum contacts.
Whether or not the trial court addressed the issue of the long-arm statute's applicability, we must examine the issue since we review questions of personal jurisdiction de novo.
Ohio's long arm statute provides in relevant part:
 "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
"(1) Transacting any business in this state;
 "(2) Contracting to supply services or goods in this state." R.C. 2307.382.
Civ.R. 4.3(A)(1) provides in pertinent part:
 "(A) When service permitted. Service of process may be made outside of this state * * * upon a person who * * * is a nonresident of this state * * *. `Person' includes an individual, * * * or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
"(1) Transacting any business in this state;
 "(2) Contracting to supply services or goods in this state."
"Transacting any business" as is used in both R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) has been given a broad definition.
"`Transact,' as defined by Black's Law Dictionary (5 Ed. 1979) 1341, `* * * means to prosecute negotiations; to carry on business; to havedealings * * *. The word embraces in its meaning the carrying on orprosecution of business negotiations but it is a broader term than theword `contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *.' (Emphasis added.)" Kentucky Oak Mall Co. v. Mitchell's Formal Wear, Inc. (1990),53 Ohio St.3d 73, 75.
The trial court in this case did not hold a hearing on appellees' motion, but instead decided the motion based on the briefs and evidentiary materials submitted by both parties. When the trial court opts not to hold an evidentiary hearing on a Civ.R. 12(B)(2) motion to dismiss, it is required to view allegations in the pleadings and the documentary evidence in the light most favorable to the plaintiff, resolving all reasonable competing inferences in his or her favor.Goldstein, 70 Ohio St.3d at 236.
In its judgment entry, the trial court stated that for purposes of its decision it assumed arguendo that Clark acted as appellees' agent when appellant contacted Clark for the sale of Tazmaniac. Whether appellees transacted business in Ohio depends, in part, on whether Clark was their agent when he negotiated and contracted with appellant for the sale of Tazmaniac.
In his complaint, appellant states the sale of Tazmaniac took place in Columbiana County, Ohio. He further states in his complaint that he paid for Tazmaniac on or about June 17, 1998, and Tazmaniac was delivered to Ohio on or about September 10, 1998.
Appellant attached his affidavit to his response to appellees' motion to dismiss. In his affidavit appellant stated he dealt with Clark for the purchase of Tazmaniac from appellees and he believed Clark to be appellees' agent throughout the transaction. Appellant also attached a bill of sale and a certificate of foal registration, which he claims evidence his belief that he bought Tazmaniac from appellees. The bill of sale, signed by Hodge and notarized, is dated September 10, 1998 and states:
 "JACK E. HODGE, JR FOR OAK CREST FARM for and in consideration of the sum of $1.00 and other valuable considerations, hereby sell, assign, transfer, and set over unto CHUCK BOSCO our entire right, title, and interest in and to the race horse TAZMANIAC (1994) BY CRYSTAL RUN OUT OF DIGITAL BEATS [sic.] the same being free of all encumbrances."
Certificates of foal registration are issued by The Jockey Club and are required in order to race or breed the horse identified. The certificate of foal appellant attached to his response brief states in part:
 "This is to certify that the bay colt named * * * * * * * * foaled February 14, 1994 by Crystal Run out of Digital Beats by Star de Naskra is duly registered by The Jockey Club."
The certificate does not identify Tazmaniac by name but by identifying characteristics. Neither party contests the fact that the certificate refers to Tazmaniac. The certificate further states that it is issued to Oak Crest Farm, that Oak Crest Farm bred the horse, and that the horse was foaled in Washington. Nothing on the certificate of foal indicates that appellees' sent it to appellant directly.
The vast majority of the evidence before the trial court upholds the view that Clark did not act as appellees' agent. Hodge stated in his affidavit that he, acting on behalf of Oak Crest, sold Tazmaniac to Clark for $5,000. A copy of the cashier's check dated June 22, 1998 made out to Oak Crest Farm for $5,000 supports Hodge's statement. (Appellees' Exhibit 5). The notation section of the check states, "Brent Clark for Tazmaniac." Nowhere does the check indicate that appellant is a party to the sale.
In his affidavit, Hodge also stated that during the week of June 7-14, 1998, Steve Bullock (Bullock), Tazmaniac's trainer in Washington, called and advised him that Clark was interested in purchasing Tazmaniac. Hodge avowed that Bullock, acting on behalf of Oak Crest, negotiated the agreement to sell Tazmaniac to Clark for $5,000. (Hodge affidavit). Hodge further stated that at no time before early September was he aware that Clark had resold Tazmaniac to appellant. (Hodge affidavit). As to the certificate of foal, Hodge stated that upon Bullock's receipt of the payment of $5,000, he authorized Bullock to obtain the certificate of foal for Tazmaniac and provide it to Clark. (Hodge affidavit). Hodge also avowed that Clark arranged for Tazmaniac to be shipped from Washington to a location unknown to either he or Bullock. (Hodge affidavit).
Bullock's affidavit corroborates that of Hodge. In his affidavit, Bullock stated that in June of 1998, Clark contacted him about the sale of any horses he was training. Bullock stated he advised Clark that Oak Crest was interested in selling Tazmaniac. (Bullock affidavit). He further stated that he negotiated with Clark on behalf of Oak Crest for the sale of Tazmaniac. (Bullock affidavit). Bullock affirmed that upon receipt of the payment, he obtained the certificate of foal registration from the racing secretary at Emerald Downs and provided it to Clark. (Bullock affidavit). Bullock also stated that after Clark purchased Tazmaniac, Clark arranged for and had Tazmaniac transported to a location unknown to him. (Bullock affidavit).
As to the bill of sale, we again look to Hodge's affidavit. Hodge avowed that in early September of 1998, Bullock contacted him and relayed a request he had received from Clark during a telephone conversation between Bullock and Clark. (Hodge affidavit). In that conversation, Clark asked Bullock to have Hodge prepare a bill of sale transferring Tazmaniac directly to appellant. (Hodge affidavit). Hodge stated it was his understanding from the information provided by Clark through Bullock that Clark had sold Tazmaniac to appellant. (Hodge affidavit). Hodge further stated Bullock informed him appellant specifically requested that the bill of sale indicate that Tazmaniac was transferred to appellant for $1.00 and other good and valuable consideration. (Hodge affidavit). Hodge swore he was unaware of Tazmaniac's sale to appellant until he was asked to prepare a bill of sale. (Hodge affidavit). Additionally, he stated he executed the bill of sale to expedite the process of making Tazmaniac eligible to race in the name of the person to whom Clark sold Tazmaniac. (Hodge affidavit). Finally, Hodge stated that he never received the $1.00 or other consideration from appellant. (Hodge affidavit).
Additionally, a letter from appellant to Clark dated February 25, 1999 further corroborates Hodge's statement that he was unaware of what Clark did with Tazmaniac after Clark purchased him from appellees. In the letter appellant wrote:
"Dear Brent [Clark]:
 "For the past three months I have been trying to get you to make `right' on Tazmaniac.
 "You have not responded to my phone calls recently so I called Jack Hodge who informed me he has never talked to you on this matter." (Emphasis added.)
In addition to this evidence that supports the fact that Clark did not act as appellees' agent, there is also a lack of evidence to indicate otherwise. Appellant alleges that appellees' issued the certificate of foal directly to him. However, he has not provided us with any evidence to support this allegation such as a receipt or envelope addressed to him from appellees. Nor has appellant supplied us with any proof that he had any sort of contact with appellees until at least three months after purchasing Tazmaniac. Additionally, when appellant paid for Tazmaniac he issued a check to "Brent Clark." (Appellee's Exhibit 2). Nowhere on the check is there any reference that Clark is appellees' agent or that the money is to go to appellees. In addition, Clark endorsed the check with no notation that he was acting as an agent. As the trial court found, there is no evidence that appellant "was aware that Brent Clark was purchasing the horse from [appellees] or even aware of whom [appellees] were until the horse was received and the foal statement was received." (July 3, 2001 Judgment Entry).
From the evidence submitted by the parties, it is apparent Clark did not act as appellees' agent in selling Tazmaniac to appellant. Accordingly, no personal jurisdiction exists over appellees since they never transacted business in Ohio nor did they supply goods in this state. Thus, even when viewing the evidence in the light most favorable to appellant, the evidence has failed to demonstrate that Ohio's long-arm statute confers personal jurisdiction over appellees onto the courts of Ohio.
Although our reasons for finding that personal jurisdiction does not exist over appellees differ from those of the trial court, our conclusion is the same. Accordingly, appellant's sole assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Waite, J., and DeGenaro, J., concur.
[1] Although appellant purchased Back to the Sixties from Clark at the same time he purchased Tazmaniac, his claims against appellees only concern the sale of Tazmaniac.
[2] Defendant Clark is not a participant in the appeal to this court.