DECISION. *Page 2 
 I. Facts and Procedure {¶ 1} Plaintiff-appellant, National City Commercial Capital Company, LLC, appeals a judgment of the Hamilton County Court of Common Pleas dismissing its suit against defendant-appellee, FOC Financial Limited Partnership, for lack of personal jurisdiction. In its complaint, National City had asked for a declaratory judgment that its interest in a certificate of deposit in its possession was superior to FOC's interest. Because FOC did not have sufficient contacts with the state of Ohio to justify the exercise of Ohio jurisdiction, we affirm the trial court's judgment.
 {¶ 2} The facts of this case are complicated. Distilled to the basics, the record shows that FOC was an Arizona limited partnership and that its primary business was commercial and real-estate financing. ProLink, Inc., an Arizona corporation, manufactured, marketed, and serviced an electronic-yardage and course-management system for lease to golf courses. To cover its expenses during shipping and installation of the ProLink system at a golf course, ProLink obtained interim financing, which FOC had regularly provided.
 {¶ 3} Once a system had been manufactured and installed at a golf course, ProLink would obtain permanent financing for the system. PFG Golf, which was a division of Information Leasing Corporation, an Ohio corporation, often provided this financing. PFG was National City's predecessor in interest.
 {¶ 4} ProLink encountered difficulties regarding financing for a deal relating to golf courses in Texas. FOC had provided the interim financing, but PFG refused to provide permanent financing due to the financial condition of another company *Page 3 
involved in the deal. Consequently, ProLink and FOC agreed that FOC would finance a $200,000 "credit enhancement."
 {¶ 5} ProLink owed FOC approximately $600,000 from unrelated credit arrangements. In lieu of immediate payment of the entire debt, FOC agreed to accept from ProLink $400,000 in cash and a $200,000 certificate of deposit, which became the subject of this lawsuit. The agreement governing this transaction specifically stated that it was subject to Arizona law.
 {¶ 6} The effect of this agreement was that it allowed ProLink to delay paying $200,000 to FOC through the use of the certificate of deposit. Then, ProLink could accept $200,000 less from PFG, which had the effect of enhancing the value of PFG's collateral. PFG deposited the certificate of deposit at a National City branch in Cincinnati, Ohio.
 {¶ 7} ProLink subsequently requested that National City release the certificate of deposit to FOC. In the interim, another company involved in the deal with ProLink, which never had any direct dealing with FOC, defaulted on an agreement. Therefore, National City took the proceeds of the certificate of deposit and put them in a bank account in Cincinnati.
 II. Personal Jurisdiction Generally {¶ 8} In its sole assignment of error, National City contends that the trial court erred in granting FOC's motion to dismiss for lack of personal jurisdiction. It argues that FOC was subject to the court's jurisdiction because of its interest in and rights to a certificate of deposit within the court's territorial limits. This assignment of error is not well taken.
 {¶ 9} While plaintiffs are generally entitled to have the factual allegations sustaining jurisdiction construed in their favor, they nevertheless bear the burden of *Page 4 
making a prima facie showing of personal jurisdiction.[1] In determining whether an Ohio court has personal jurisdiction over a nonresident defendant, the court must apply a two-part test. It must determine (1) whether Ohio's long-arm statute, R.C. 2307.382, and the complementary civil rule, Civ. R. 4.3, confer jurisdiction, and (2) whether granting jurisdiction comports with due process.[2]
 III. Ohio's Long-Arm Statute — Transacting Business {¶ 10} Both the long-arm statute and the corresponding civil rule allow an Ohio court to assume jurisdiction over any person "transacting any business" in the state.[3] Courts construe this phrase broadly. The word "transact" is broader than the term "contract" and includes in its meaning "to carry on business" and "to have dealings. "[4]
 {¶ 11} Courts have held that simply signing a guaranty or surety agreement is not transacting business in Ohio under the meaning of the long-arm statute.[5] While this case does not involve a guaranty or surety agreement per se, the "credit enhancement" agreement is sufficiently similar to apply the same logic. FOC allowed money that ProLink owed it to be deferred to bolster the credit of another company in a deal that had nothing to do with Ohio. The mere fact that the certificate of deposit used to facilitate the deal, and, later, its proceeds, ended up in an Ohio bank does not mean that FOC was transacting business in Ohio.
 {¶ 12} National City relies upon this court's decision inCaudill, in which we held that the out-of-state beneficiaries of an Ohio trust had transacted business in Ohio. *Page 5 
We stated that the defendants "are beneficiaries of trusts established and administered in Ohio. Clearly, [the beneficiaries] have accepted money from the trusts. Accepting funds from a trust with its situs in Ohio firmly establishes jurisdiction under Ohio's long-arm statute."[6] Taking money from a trust indicates an ongoing relationship. In fact, we went on to state, "By accepting distributions from an Ohio trust, [the beneficiaries] carried on activities in Ohio and benefited from its laws. These activities were of a continuous and systematic nature such that maintenance of the suit in Ohio does not offend traditional notions of fair play and substantial justice."[7]
 {¶ 13} Caudill is distinguishable from the present case. FOC's contact with Ohio was not systematic or ongoing. It had an interest in the proceeds of a certificate of deposit that happened to be in an Ohio bank. Its only involvement in this case was a single agreement to provide a credit enhancement to an Arizona company to facilitate a lease in Texas. This was not transacting business in Ohio.
 IV. Due Process {¶ 14} Further, we hold that an Ohio court's assertion of jurisdiction over FOC would violate its right to due process. The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which that individual has not established meaningful contacts, ties, or relations.[8] A state may constitutionally assert personal jurisdiction over a nonresident defendant if the defendant has minimum contacts with the state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice. "[9] *Page 6 
 {¶ 15} The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The defendant must purposely avail itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws.[10] The actions of the defendant in the forum state must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.[11]
 {¶ 16} FOC has no relationship with Ohio but for its interest in the now liquidated certificate of deposit. It has not availed itself of the privilege of conducting activities in Ohio and invoking the benefits and protections of Ohio law. Consequently, it does not have a substantial enough connection with Ohio to make the exercise of jurisdiction in this state reasonable.
 {¶ 17} We hold that the trial court did not err in granting FOC's motion to dismiss for want of personal jurisdiction. We overrule National City's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
SUNDERMANN, P.J., and PAINTER, J., concur.
[1] Estate of Poole v. Grosser (1999), 134 Ohio App.3d 386, 394,731 N.E.2d 226.
[2] U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods,Inc., 68 Ohio St.3d 181, 183-184, 1994-Ohio-504, 624 N.E.2d 1048;Poole, supra, at 391.
[3] R.C. 2307.382(A)(1); Civ. R. 4.3(A)(1).
[4] Goldstein v. Christiansen, 70 Ohio St.3d 232, 235-236,1994-Ohio-229, 638 N.E.2d 541; Cundall v. U.S. Bank, NA.,174 Ohio App.3d 421, 2007-Ohio-7067, 882 N.E.2d 481, ¶ 71; Mustang Tractor Equip. Co. v. Sound Environmental Services, Inc. (C.P. 1999),104 Ohio Misc.2d 1, 7, 727 N.E.2d 977.
[5] Mustang Tractor, supra, at 8-9; Ramada Franchise Systems, Inc. v.Hanna Hotel Ent., LLC (N.D.Ohio 2001), 147 F.Supp.2d 840, 845;Diebold, Inc. v. Firstcard Fin. Services, Inc. (N.D.Ohio 2000),104 F.Supp.2d 758, 761-762.
[6] Caudill, supra, at ¶ 72.
[7] Id. at ¶ 76.
[8] Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462, 471-472,105 S.Ct. 2174; Poole, supra, at 394.
[9] Internatl. Shoe Co. v. Washington (1945), 326 U.S. 310, 316,66 S.Ct. 154; U.S. Sprint, supra, at 186.
[10] Hanson v. Denckla (1958), 357 U.S. 235, 253, 78 S.Ct. 1228;Poole, supra, at 394.
[11] Poole, supra, at 394; Cincinnati Art Galleries v. Fatzie (1990),70 Ohio App.3d 696, 699, 591 N.E.2d 1336. *Page 1